303 Ga. 588
FINAL COPY

S18A0062.  MCGRUDER v. THE STATE.

GRANT, Justice.

Rajonte McGruder was convicted of malice murder in the death of Kenneth Quarterman, Jr., aggravated assault against Lewis Brown III, and other crimes in connection with a drive-by shooting on June 16, 2013.  On appeal, McGruder argues that the evidence admitted at trial was legally insufficient to support his convictions.  We find that the evidence was sufficient to authorize the jury to find beyond a reasonable doubt that McGruder was guilty of the crimes of which he was convicted, and therefore affirm.[1]

---

[1] Quarterman was killed on June 16, 2013.  On June 22, 2015, McGruder and 11 others were indicted by a Jefferson County grand jury for the malice murder of Quarterman, felony murder predicated on aggravated assault of Quarterman, conspiracy to murder Quarterman, conspiracy to murder Michael Reaves, aggravated assault by shooting Brown, five counts of possession of a firearm during the commission of a felony, violation of the Racketeer Influenced and Corrupt Organizations Act (RICO) (OCGA § 16-14-4), and violation of the Street Gang Terrorism and Prevention Act (OCGA § 16-15-4) (the "Street Gang Act").  Before trial, two of the firearm possession counts and the RICO count were dismissed.  At the conclusion of a joint trial with co-defendant Damien Simpkins held August 3-7, 2015, the jury found both defendants guilty of all remaining counts of the indictment.  The trial court sentenced McGruder to life imprisonment for malice murder,

I.

Viewed in the light most favorable to the verdicts, the evidence presented at trial showed that late in the evening on June 15, 2013, McGruder and several other men associated with a street gang known as "MFG" assembled in a field near Club Apollo in Louisville, Georgia. There was a block party outside the club and the area was crowded with people. McGruder, Damien Simpkins, Dalonte Tarver, Octavius Hickson, and Jason Williams gathered in a circle to plot an attack on a group McGruder called the "Wrens Boys," which included Michael Reaves, Brown, and Quarterman. There was a history of conflict between MFG and the Wrens Boys. That night, McGruder understood that

five years consecutive each for two of the remaining firearm counts, twenty years consecutive for aggravated assault of Brown, ten years concurrent to be served on probation for conspiracy to murder Reaves, and fifteen years consecutive for violation of the Street Gang Act. The other firearm count merged for sentencing purposes, see *Donaldson v. State*, 302 Ga. 671 (808 SE2d 720) (2017), and the conspiracy to murder Quarterman count was set aside, see OCGA § 16-4-8.1. The trial court purported to merge the felony murder count, though that count actually was vacated by operation of law. See *McClendon v. State*, 299 Ga. 611, 619 (791 SE2d 69) (2016). On August 13, 2015, McGruder filed a motion for new trial, which he amended on August 20, 2015, and again on September 16 and 19, 2016 after the appearance of new counsel. The trial court denied the motion for new trial on March 3, 2017. McGruder filed a timely notice of appeal on March 9, 2017, and the case was docketed in this Court to the term beginning in December 2017 and submitted for a decision on the briefs. We have considered a separate appeal by co-defendant Simpkins, whose convictions we also affirm today. See *Simpkins v. State*, 303 Ga. __ (__ SE2d __) (2018).

they were after Reaves in particular, because Reaves had been "talking trash" to the girlfriend of another MFG member.

Tarver and Hickson said, "We gonna get those n*****s tonight," and McGruder knew they were talking about the Wrens Boys. Tarver asked McGruder where his "colors" were, and then told McGruder he was going to have to drive. Tarver told Simpkins, who had a pistol in his waistband, that Simpkins was going to have to "do it," and pointed toward several of the Wrens Boys who were coming out of the club. McGruder, Simpkins, and another individual got into a black Dodge Charger, with McGruder driving and Simpkins sitting in the driver's side rear seat. McGruder drove the Charger around the block and stopped in front of the Wrens Boys, and Simpkins fired several shots at the group.[2] Quarterman was shot in the head and later died. Brown was shot in the face and the hand, but survived. Someone returned fire and a bullet struck the driver's window of the Charger, scaring McGruder. He sped away and drove several miles to a nearby town, where they left the Charger. Simpkins called someone McGruder did not know to come pick them up.

---

[2] Eyewitness accounts of the shooting differed with regard to whether McGruder's second passenger also fired at the Wrens Boys.

McGruder was arrested five days after the shooting, based on interviews with eyewitnesses to the shooting who identified McGruder as the driver of the Charger. Initially, McGruder said that he had been at the block party near Club Apollo but had gone home before the shooting. Eventually, however, McGruder admitted to driving the Charger as instructed by Tarver.

## II.

In his sole enumeration of error, McGruder argues that the evidence summarized above was insufficient to support his convictions under the standard set out in *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). We disagree.

When evaluating a challenge to the sufficiency of the evidence, we view all of the evidence admitted at trial in the light most favorable to the prosecution and ask whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt of the crimes of which he was convicted. See *Jackson*, 443 U. S. at 319. This evaluation "essentially addresses whether the government's case was so lacking that it should not have even been submitted to the jury." *Musacchio v. United States*, ___ U. S. ___, ___ (136 SCt 709, 715, 193 LE2d 639) (2016) (citation and punctuation omitted). Our limited review leaves to the jury the resolution of conflicts in

the evidence, the weight of the evidence, the credibility of witnesses, and reasonable inferences to be made "from basic facts to ultimate facts." Id. (citation and punctuation omitted); see *Walker v. State*, 296 Ga. 161, 163 (766 SE2d 28) (2014).

McGruder's first challenge is to his murder conviction. He argues that no evidence showed that he knew or should have known that Simpkins would shoot at the Wrens Boys or that he fired a gun himself. That contention is incorrect. The jury could infer from the evidence admitted at trial that McGruder was aware of the pistol that was visible at Simpkins's waistline and knew that Simpkins was going to use the gun to shoot at the Wrens Boys. And while McGruder may not have personally fired the gun in the shooting, a person who intentionally assists in the commission of a crime may be convicted as a party to the crime. See OCGA § 16-2-20; *Calloway v. State*, 303 Ga. 48, 51 (810 SE2d 105) (2018). "While mere presence at the scene of a crime is not sufficient evidence to convict one of being a party to a crime, criminal intent may be inferred from presence, companionship, and conduct before, during and after the offense." *Sapp v. State*, 300 Ga. 768, 769 (798 SE2d 226) (2017) (citation and punctuation omitted). Here, evidence presented at trial— including McGruder's own statement to police—showed that McGruder heard

Tarver and Hickson say that they were going to "get" the Wrens Boys and that he knew it was serious. He knew about the ongoing conflict with the Wrens Boys and that Reaves was a particular target that night. McGruder agreed to drive the car while Simpkins, who he knew had been told to "do it," rode in the back seat armed with a pistol. McGruder drove the car around the block and stopped directly in front of the Wrens Boys. He then drove the shooter away from the scene and left the vehicle to be picked up by others. When questioned about the shooting, he initially lied to police about his presence and participation. From this evidence, a rational jury could easily find beyond a reasonable doubt that McGruder participated in a conspiracy to murder Reaves and intentionally aided in the implementation of that plan by driving the vehicle in a drive-by shooting that resulted in Quarterman's death and Brown's injuries. See *White v. State*, 298 Ga. 416, 417-418 (782 SE2d 280) (2016) (evidence of defendant's participation as the driver in a drive-by shooting was sufficient to support his convictions as a party to the crimes of murder and unlawful possession of a firearm).

McGruder also challenges his conviction for violation of Georgia's Street Gang Act, arguing that although the evidence may have shown that he

liked to "play gangster," there was no real evidence that he was associated with a criminal street gang. Again, we disagree.

To prove that McGruder violated the Street Gang Act as alleged in the indictment, the State was required to show the existence of a "criminal street gang," defined in OCGA § 16-15-3 (2) as "any organization, association, or group of three or more persons associated in fact, whether formal or informal, which engages in criminal gang activity"; McGruder's association with the gang; that McGruder committed one of the offenses identified in OCGA § 16-15-3 (1), which includes any crime involving violence; and that the crime was intended to further the interests of the gang. See OCGA §§ 16-15-3; 16-15-4 (a); *Anthony v. State*, 303 Ga. 399 (811 SE2d 399) (2018); *Rodriguez v. State*, 284 Ga. 803, 806-807 (671 SE2d 497) (2009). Here, each of these requirements was met at trial.

First, the State presented evidence showing that "MFG"[3] is a local street gang that is affiliated with a national gang called the Gangsta Disciples. The State's gang expert testified that the Gangsta Disciples, in turn, are a national gang that is part of a gang alliance known as Folk Nation, and that their colors

---

[3] Evidence showed that the abbreviation "MFG" stands for "Money Fame and Glory" or, alternatively, "Mother F***ing Gangstas."

are black or dark blue; that they use certain symbols, including the six-pointed star; and that gang associates "identify to the right" by, for example, tilting their hat or belt to the right, rolling their pant leg up on the right, or leaving their shoelaces untied on the right. The expert also testified that a group can be identified as a gang by the gang-related colors, letters, symbols, and numbers in its members' tattoos, clothing, or jewelry; Tarver, Hickson, Ivey Elam, and another member of MFG had tattoos with the letters "MFG" along with other letters, numbers, and symbols that the expert identified as gang-related. The expert further testified that it is common for gangs to call themselves rap groups; McGruder and Elam both told police that MFG was a rap group. See OCGA § 16-15-3 (2) (existence of a gang "may be established by evidence of a common name or common identifying signs, symbols, tattoos, graffiti, or attire or other distinguishing characteristics").

The evidence further showed that, before the drive-by shooting was carried out, Tarver, Hickson, McGruder, and Simpkins "engaged in criminal gang activity" when they gathered to plan the attack and Tarver gave instructions to McGruder and Simpkins. See OCGA § 16-15-3 (1) ("'Criminal gang activity' means the commission, attempted commission, conspiracy to commit, or solicitation, coercion, or intimidation of another person to commit"

any enumerated crime, including a crime involving violence or the use of weapons); *Hayes v. State*, 298 Ga. 339, 341-342 (781 SE2d 777) (2016) (evidence of gang members' conspiracy to commit the underlying crimes was sufficient to prove criminal gang activity). This evidence was plainly sufficient to carry the State's burden of proving the existence of a criminal street gang.

Second, regarding McGruder's affiliation with the gang, Georgia Bureau of Investigation agent Sarah Lue presented evidence that McGruder had a folder of photographs labeled "MFG" on his Facebook page, which included a picture of McGruder wearing a black shirt and a black hat, tilting his head to the right, holding up a black bandana in his right hand, and wearing a necklace with a six-pointed star. The State's gang expert testified that the picture showed that McGruder was affiliated with the gang because he was wearing the gang's color (black) and one of their symbols, the six-pointed star; and because he was "identifying to the right."

The evidence also showed that, before instructing McGruder to drive the Charger, Tarver challenged McGruder as to why he was not wearing his gang "colors"; a witness testified that McGruder was supposed to have been wearing black, the color of MFG and the Gangsta Disciples. One of McGruder's acquaintances, Devin Lowery, testified that McGruder told him that he was

required to go to a "nine" after the shooting of the Wrens Boys. Lowery explained that a "nine" was a term used by the Gangsta Disciples to refer to a meeting. This evidence was sufficient for a rational jury to find beyond a reasonable doubt that McGruder was associated with the criminal street gang MFG.

Third, as discussed above, the evidence was sufficient to support the jury's finding beyond a reasonable doubt that McGruder was guilty of murder, conspiracy to commit murder, aggravated assault, and possession of a firearm during the commission of a felony, each of which qualifies as a predicate crime for criminal street gang activity. See OCGA § 16-15-3 (1) (J) (criminal street gang activity includes any crime involving violence or weapons).

Fourth, and finally, the State's gang expert testified that individuals associated with a street gang often earn status in the gang by committing violent acts, such as a drive-by shooting, on the orders of the gang leader. The expert also stated that a defining characteristic of a street gang is that "no indicator of disrespect goes unanswered." Evidence of the prior conflict between MFG members and the Wrens Boys, McGruder's own statement to law enforcement that MFG was after Reaves that night because of Reaves's disrespect to an MFG member's girlfriend, and McGruder's and Simpkins's

participation in the drive-by shooting at Tarver's direction all supported an inference by the jury that the shooting was intended to further the gang's interests.  Thus, the evidence was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that McGruder was guilty of violating the Street Gang Act.  We affirm his convictions.

Judgment affirmed.  All the Justices concur.

Decided May 7, 2018.

Murder. Jefferson Superior Court. Before Judge Reeves.

McMillian, Rawlings & Howard, Johnny E. C. Vines, for appellant.

S. Hayward Altman, District Attorney, Kelly A. Jenkins, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Michael A. Oldham, Assistant Attorney General, for appellee.

Brandon A. Bullard, Jimmonique R. S. Rodgers, James C. Bonner, Jr., amici curiae.