304 Ga. 313
FINAL COPY


S18A0949. PARKS v. THE STATE.


BOGGS, Justice.

Appellant Dexter Lamar Parks was tried before a jury and found guilty of

felony murder, aggravated assault with a deadly weapon, possession of a firearm

during the commission of a crime, and participation in criminal gang activity.[1]

He now appeals, asserting that the trial court erred in failing to exclude expert

testimony over his objection and that the evidence was insufficient to sustain his

convictions. We disagree on both grounds asserted and affirm.

Construed in the light most favorable to the verdict, the evidence showed

that on the afternoon of April 16, 2008, Parks, Rodger Jackson and other

---

[1] The crimes occurred on April 16, 2008. On October 30, 2009, a Cobb County grand jury indicted Parks on charges of malice murder, felony murder (two counts), aggravated assault with a deadly weapon, possession of a firearm during the commission of a crime, and participation in a criminal street gang. Following a February 22-26, 2010 trial, the jury acquitted Parks of malice murder but found him guilty on the remaining counts, and he was sentenced to life plus five years in prison. Parks' motion for new trial was filed on March 5, 2010 and denied on April 21, 2014. His notice of appeal was filed on May 20, 2014, and amended on October 30, 2017. This case was docketed in this Court for the April 2018 term and was orally argued on June 4, 2018.

members of GMC ("Get Money Click") drove to a neighborhood in Austell, Georgia. The fourteen or more young men pulled up in about six or seven cars and began shouting "GMC" while "trying to fight. They circled around, then they came back. When they came back, they all got out [of] the car[s] [except Parks], just trying to fight." Jackson and other members approached Lavita Harrison's house. One in the group told Harrison that her brothers and cousins "shouldn't mess with their homeboys at school." As Harrison was telling the members to go away and the residents of the neighborhood to go inside, her cousin, the victim Caleb Burroughs, walked up the street toward Harrison's home. Moments later, Parks, who was sitting in one of the cars, yelled, "bust that sh*t," and Jackson fired twice into the air. Jackson then lowered his gun and fired once into the crowd, shooting the victim in the abdomen. All of the GMC members fled the scene and reconvened at Parks' home. There, Jackson spoke about the incident saying that "those boys are always trying to buck" and that "[he] burnt that a**." The victim died from the gunshot wound.

Multiple witnesses testified that GMC was a gang in the Austell area, and two of Parks' friends testified that Parks was a member of GMC. However, two witnesses maintained that GMC was a music group, not a gang. One of these

witnesses was impeached with his testimony from an earlier hearing, where he stated that he and Parks were members of GMC, which he admitted was a gang.

The State presented an expert, an agent assigned to the Marietta/Cobb/Smyrna organized crime unit or CAGE ("Cobb Anti-Gang Enforcement"). He testified that, in his expert opinion, GMC was a gang that has been operating since 2006. He stated that GMC stands for "Get Money Click," which he explained is a loosely-organized, nontraditional or hybrid criminal street gang that operates on the south side of Cobb County. The expert explained further that he personally had interviewed known and suspected GMC members, that the gang uses the color green and the letters "GMC" with one or two dollar signs in front of and behind them, and that the members usually wear black attire. The State also presented evidence of clothing from Parks' room that had GMC letters and symbols on it, and Parks was wearing a GMC hat in a videotape played at trial.

1. Parks challenges the sufficiency of the evidence to sustain his convictions. When evaluating a challenge to the sufficiency of the evidence, we view the evidence admitted at trial in the light most favorable to the verdict and ask whether any rational trier of fact could have found the defendant guilty

beyond a reasonable doubt. McGruder v. State, 303 Ga. 588, 590 (II) (814 SE2d 293) (2018). And "[t]o warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." Former OCGA § 24-4-6.[2] In that regard:

> Questions regarding the reasonableness of hypotheses are generally to be decided by the jury that heard the evidence, and so long as the evidence, even though circumstantial, was sufficient to exclude every reasonable hypothesis save that of guilt, this Court will not disturb a finding of guilt unless the verdict is insupportable as a matter of law.

Taylor v. State, 304 Ga. 41, 44 (1) (816 SE2d 17) (2018).

Although the evidence was certainly not overwhelming as the State argues, we conclude that it was sufficient to authorize a rational jury to find Parks guilty beyond a reasonable doubt of the crimes for which he was convicted. See Jackson v. Virginia, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979); Veal v. State, 298 Ga. 691, 694 (1) (784 SE2d 403) (2016).

(a) Parks argues that the circumstantial evidence failed to establish that he was a party to the crimes. "Every person concerned in the commission of a

---

[2] Parks was tried in 2010, under the old Evidence Code.

4

crime is a party thereto and may be charged with and convicted of commission of the crime." OCGA § 16-2-20 (a). In relevant part, "[a] person is concerned in the commission of a crime only if he: . . . (3) Intentionally aids or abets in the commission of the crime; or (4) Intentionally advises, encourages, hires, counsels, or procures another to commit the crime." OCGA § 16-2-20 (b) (3), (4). "While mere presence at the scene of a crime is not sufficient evidence to convict one of being a party to a crime, criminal intent may be inferred from presence, companionship, and conduct before, during and after the offense." (Citations and punctuation omitted.) Navarrete v. State, 283 Ga. 156, 158 (1) (656 SE2d 814) (2008). The evidence here showed that Parks, Jackson, and other members of GMC, driving multiple cars, entered the neighborhood. All of the members, except for Parks, exited the cars and shouted "GMC," and one in the group told Harrison that her family members "shouldn't mess with their homeboys." Parks shouted "bust that sh*t," and Jackson fired a gun three times with the third shot striking the victim, killing him. The group reconvened at Parks' home, where Jackson stated that "those boys are always trying to buck." This evidence of Parks' presence at the scene, his companionship with other members of GMC, and his actions during and after the crimes was sufficient for

5

a jury to conclude that Parks was a party to the crimes charged. See OCGA § 16-2-20 (a) and (b) (4); see also, e.g., Downey v. State, 298 Ga. 568, 570 (1) (783 SE2d 622) (2016) ("accomplice need only have knowledge that the principal is engaging in reckless conduct and intentionally assist or encourage that conduct with the intent to promote or facilitate its commission.") (citations and punctuation omitted); Sims v. State, 281 Ga. 541, 542 (1) (640 SE2d 260) (2007) (evidence that defendant had recently threatened to shoot victim, encouraged his brother to shoot victim, and fled with his brother and others immediately after his brother shot victim, was sufficient to show defendant was a party to the victim's murder). While Parks argues that there was no evidence of the meaning of "bust that sh*t," the jury could have reasonably inferred that the statement, made at the same time the GMC members who accompanied Parks attempted to start a fight with residents, meant for Jackson to fire a weapon.[3] See Welbon v. State, 301 Ga. 106, 110 (2) (799 SE2d 793) (2017) (interpreting witness statement was for factfinder having had the opportunity to listen to the testimony and make judgments about credibility, tone, and context);

---

[3] Parks suggests that "bust that sh*t" could have been an instruction for "others to bust out of the neighborhood, to quit harassing Harrison and the others, or perhaps to begin rapping (i.e., bust a rhyme)."

6

see also, e.g., Burney v. State, 299 Ga. 813, 814 (1) (a) (792 SE2d 354) (2016) (witness heard accomplice say "I ought to bust this f\*\*king n\*\*\*a" just before accomplice handed gun to appellant, who then fired shots at victim); Hill v. State, 310 Ga. App. 695, 697 (713 SE2d 891) (2011) (defendant claimed he believed victim was reaching for a gun when victim threw a bottle at him, reached under his shirt, and said, "Now I'm going to bust you").

(b) Parks asserts that the evidence was insufficient as to the gang count because the State relied on inadmissible hearsay — the gang expert's testimony that GMC had tagged[4] a sign in a neighborhood — to establish an element of his conviction under Georgia's gang statute.

Former OCGA § 16-15-4 (a), applicable at the time of Parks' trial, provided, "It shall be unlawful for any person employed by or associated with a criminal street gang to conduct or participate in criminal street gang activity through the commission of any offense enumerated in paragraph (1) of [former]

---

[4] See OCGA § 16-15-3 (1) (H) describing "criminal gang activity" to include "[a]ny offense of criminal trespass or criminal damage to property resulting from any act of gang related painting on, *tagging*, marking on, writing on, or creating any form of graffiti on the property of another." (Emphasis supplied.) "Tagging" is defined as "to provide or mark with" or "to supply with an identifying marker." Webster's New Collegiate Dictionary (9th ed. 1991). It is a term that describes a type of graffiti. See Sifuentes v. State, 293 Ga. 441, 441-442 (746 SE2d 127) (2013).

7

Code Section 16-15-3."[5] Former OCGA § 16-15-3 provided in relevant part:

As used in this chapter, the term:

(1) "Criminal gang activity" means the commission, attempted commission, conspiracy to commit, or solicitation, coercion, or intimidation of another person to commit any of the following offenses on or after July 1, 2006:

. . .

(H) Any offense of criminal trespass or criminal damage to property resulting from any act of gang related painting on, tagging, marking on, writing on, or creating any form of graffiti on the property of another;

. . .

(J) Any criminal offense in the State of Georgia, any other state, or the United States that involves violence, possession of a weapon, or use of a weapon, whether designated as a felony or not, and regardless of the maximum sentence that could be imposed or actually was imposed.

(2) "Criminal street gang" means any organization, association, or group of three or more persons associated in fact, whether formal or informal, which engages in criminal gang activity as defined in paragraph (1) of this Code section. The existence of such organization, association, or group of individuals associated in fact may be established by evidence of a common name or common identifying signs, symbols, tattoos, graffiti, or attire or other distinguishing characteristics. Such term shall not include three or more persons, associated in fact, whether formal or informal, who are not engaged in criminal gang activity.[6]

---

[5] The current version of OCGA § 16-15-4 (a) contains the same language except for the deletion of "street" preceding "gang activity." See Ga. L. 2010, p. 230, § 3.

[6] In 2010, the phrase "including, but not limited to, common activities, customs, or behaviors," was added to this subsection following "distinguishing characteristics." See Ga. L. 2010, p. 230, § 2.

When asked how long GMC has been operating in Cobb County, the gang expert explained, "The first documented incident from them was 2006." Trial counsel objected that the expert's testimony was "just a way to get hearsay in." The trial court overruled the objection, and the expert explained the details of the "documented incident": "[T]hey had tagged a sign in the neighborhood . . . and we got a complaint through the — got an anonymous complaint through one of the citizens for that incident."

Parks complains that the expert's testimony about tagging a sign, which qualifies as "criminal gang activity" under OCGA § 16-15-3 (1) (H), is hearsay and therefore cannot be used to satisfy the State's burden of showing that GMC had engaged in a prior incident of gang activity. Contrary to Parks' argument, former OCGA §§ 16-15-3 and 16-15-4 do not require evidence of a *prior incident* of criminal gang activity, although such evidence may be used to establish the existence of a criminal street gang or that a defendant is associated with a gang. See Lang v. State, 344 Ga. App. 623, 625 (2) (a) (812 SE2d 16) (2018) (evidence defendant was with other gang members at scene of shooting a year before crimes relevant to issue of defendant's association with criminal street gang). These Code sections require a showing that Parks participated in

criminal street gang activity while associated with a criminal street gang,[7] which is defined as a group that *engages in* criminal street gang activity through "the commission, attempted commission, conspiracy to commit, or solicitation, coercion, or intimidation of another person to commit any" of several listed offenses. Former OCGA § 16-15-3 (1). In that regard, the record reveals that members of GMC drove though the Cobb County neighborhood shouting "GMC" and got out of their cars "trying to fight" the residents. This is evidence that GMC engages in criminal street gang activity — attempting or conspiring to commit a criminal offense that involves violence, such as simple assault (OCGA § 16-5-20), simple battery (OCGA § 16-5-23), or battery (OCGA § 16-5-23.1). See OCGA § 16-15-3 (1) (J); Hayes v. State, 298 Ga. 339, 341-342 (a) (781 SE2d 777) (2016) (appellant claimed there was no evidence that he and co-defendants had engaged in any other criminal gang activity, but evidence of

---

[7] The existence of GMC was established by the expert's testimony concerning the name, identifying signs and symbols, and the attire used by the group. See OCGA § 16-15-3 (2); see also McGruder, supra, 303 Ga. at 592 (II). Additionally, evidence of clothing with the GMC name and symbols on them found in Parks' room, the video showing him wearing a GMC hat, and the testimony of witnesses, was sufficient to establish his association with the gang. See id. at 592-593 (II) (evidence showed that defendant had a folder on his Facebook page labeled with the gang name which contained pictures of him wearing gang colors and symbols).

their conspiracy to commit armed robbery was proof of existing and ongoing criminal activity); cf. People v. Loeun, 947 P2d 1313, 1318 (III) (Cal. 1997) ("The Legislature's use of the present tense 'engage in' indicates its intent that instances of current criminal conduct can satisfy the statutory requirement for a 'pattern of criminal gang activity.'"). Therefore, assuming without deciding whether the expert's testimony concerning the tagging incident was inadmissible hearsay,[8] there was sufficient evidence to show that GMC is a group that engages in criminal gang activity.[9]

2. Parks asserts that the trial court erred in allowing the testimony of the

---

[8] Under Georgia's old Evidence Code, improperly admitted hearsay was deemed to have no probative value and could not therefore be used to determine the sufficiency of the evidence. See Livingston v. State, 268 Ga. 205, 209 (1) (486 SE2d 845) (1997); see also Cowart v. State, 294 Ga. 333, 343 (6) n.12 (751 SE2d 399) (2013).

[9] Parks cites Rodriguez v. State, 284 Ga. 803 (671 SE2d 497) (2009) in support of his argument that the State had the burden of showing that GMC had engaged in criminal gang activity prior to the shooting of the victim. In Rodriguez, however, we held that "the commission of an enumerated offense by the defendant is not itself sufficient to prove the existence of a 'criminal street gang.' If it were sufficient, the nonsensical result would be that a member of any legitimate group could violate the Act merely by committing an enumerated offense." Id. at 808 (2). We held further that "there must be some nexus between the act and an intent to further street gang activity," and that the "'criminal gang activity' or plans for continuation of that activity must be ongoing at the time of the defendant's commission of an enumerated offense." Id. at 807 (1) and 809 (2). In this case, it is not the commission of Parks' offenses that proves GMC's existence. Rather, other evidence shows GMC's existence, and the events that occurred just before Parks' commission of the offenses show that the criminal gang activity was ongoing. See Hayes, supra, 298 Ga. at 342 (a).

11

State's gang expert. He complains that the expert's testimony was based on inadmissible hearsay that was not beyond the ken of the jurors.

Former OCGA § 24-9-67, applicable at the time of Parks' trial, provided, "In criminal cases, the opinions of experts on any question of science, skill, trade, or like questions shall always be admissible; and such opinions may be given on the facts as proved by other witnesses." It is true, as Parks argues, that

> [a]n expert may not give an opinion that is based entirely on the hearsay reports, knowledge, or opinions of other experts. A testifying expert is not to serve as a conduit for the opinions of others, and must base his opinion on facts supported by evidence in the case; he cannot base his opinion on what he has heard in private conversations with others.

(Citations and punctuation omitted.) Cobb v. State, 283 Ga. 388, 390-391 (2) (658 SE2d 750) (2008). The expert's testimony here, however, was not based on hearsay but on his personal experience and firsthand knowledge. He explained that he had interviewed known and suspected GMC members and had personal knowledge of where GMC operates, the signs and symbols it uses, how it is organized, and its type — all of which were factual matters beyond the ken of an average juror. See Edge v. State, 275 Ga. 311, 313 (5) (567 SE2d 1) (2002) (expert's testimony about aspects of gang culture relevant to case

12

concerned factual matters outside experience of average juror). While it is not clear from the expert's testimony whether he had personal knowledge of the tagging incident, his lack of personal knowledge would not mandate the exclusion of his opinion on GMC. See generally Velazquez v. State, 282 Ga. 871, 875 (3) (655 SE2d 806) (2008) (expert's lack of personal knowledge "merely presents a jury question as to the weight which should be accorded the opinion"). We therefore cannot say that the trial court abused its discretion in allowing the expert's testimony.

Judgment affirmed. Hines, C. J., Melton, P. J., Benham, Hunstein, Nahmias, Blackwell, and Peterson, JJ., concur.

\

Decided August 20, 2018.

Murder. Cobb Superior Court. Before Judge Leonard.

Mark A. Yurachek, for appellant.

D. Victor Reynolds, District Attorney, Michael S. Carlson, Amelia G. Pray, Grady A. Moore, John S. Melvin, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Vanessa T. Meyerhoefer, Assistant Attorney General, for appellee.