307 Ga. 450
FINAL COPY

S19A1226. JORDAN v. THE STATE.

BLACKWELL, Justice.

Wayan Malik Jordan was tried by a Ben Hill County jury and convicted of murder and other crimes in connection with the fatal shooting of Craigory Burch. Jordan appeals, contending that the State failed to present evidence legally sufficient to sustain his convictions, that he was denied the effective assistance of counsel at trial, and that the trial court erred when it admitted certain evidence of gang activity. Upon our review of the record and briefs, we find no reversible error, and we affirm.[1]

---

[1] The crimes were committed on January 20, 2016. A Ben Hill County grand jury indicted Jordan, Nathaniel Baker, Dabrentise Overstreet, Keyana Dyous, Earnest Holcomb, Anjevell Johnson, and Rosalyn Swain in April 2016, charging them with murder with malice aforethought, murder in the commission of a felony (aggravated assault), home invasion, two counts of armed robbery, three counts of aggravated assault, and two counts of criminal gang activity. In addition, Jordan, Baker, and Overstreet were charged with four counts of unlawful possession of a firearm during the commission of a felony. Jordan was tried alone in March 2017, and the jury found him guilty on all counts. The trial court sentenced Jordan to imprisonment for life for malice murder, a consecutive term of imprisonment for life for home invasion,

1. Viewed in the light most favorable to the verdict, the evidence shows that on January 20, 2016, Dabrentise Overstreet contacted Jordan, Nathaniel Baker, and others affiliated with the "G-Shine" gang so that they could commit a robbery. Their target was Burch, who recently had won approximately $430,000 in the Georgia Lottery and had purchased a home in Fitzgerald with some of the proceeds. Jordan was initially reluctant to participate, but he ultimately agreed to do so in order to redeem himself after a prior incident in which he had stolen drugs from the gang.

The gang members went to Burch's home in two cars (driven by Overstreet's and Baker's girlfriends), stopping along the way so that Jordan could acquire a firearm. Baker kicked in the front door

two concurrent terms of imprisonment for life for armed robbery, two concurrent terms of imprisonment for twenty years for aggravated assaults upon Burch's girlfriend and two-year-old child, two concurrent terms of imprisonment for twenty years for criminal gang activity, and three consecutive terms of imprisonment for five years for the unlawful possession of a firearm during the commission of a felony. The felony murder count was vacated by operation of law, and the trial court found that the other offenses merged for sentencing purposes. Jordan timely filed a motion for new trial, which he amended in April 2018, and the trial court denied that motion in March 2019. Jordan then timely filed a notice of appeal. The case was docketed in this Court for the August 2019 term and submitted for decision on the briefs.

of the home, and he, Overstreet, and Jordan entered with their guns drawn.[2] Burch was in the living room of his home with his girlfriend — Jasmine Hendricks — and their two young children,[3] and Overstreet and Jordan held them at gunpoint and demanded money while Baker went to the back of the house to look for valuables. Overstreet shot Burch several times in the leg while Burch was holding his two-year-old son on the sofa,[4] and Jordan went through Hendricks's purse, which also was on the sofa. The purse contained Hendricks's cell phone and wallet in addition to two cell phones that belonged to Burch. Shortly thereafter, the men left the house.

After Jordan unsuccessfully attempted to start Burch's truck in the driveway, Overstreet returned to the front of the home and shot Burch several times in the chest while Burch was seated next to Hendricks. The gang members (including Jordan) fled the scene

---

[2] Gang members Earnest Holcomb and Anjevell Johnson remained in the cars with the women and did not enter Burch's home.

[3] Burch had a third child who was asleep in a back bedroom during the home invasion.

[4] According to the medical examiner, at least one of the wounds that Burch sustained to his thigh was fatal because it "transected . . . two major blood vessels."

together, and Jordan laughed about the shooting as the men divided the property that they had taken. In addition to the wallet and phones that Jordan took from Hendricks's purse, the stolen property included Burch's wallet. Jordan was arrested, and — while he was being booked — he spontaneously said "f**k the man I killed [and] f**k this place."

Jordan claims that the evidence is not legally sufficient to sustain his conviction for murder because the evidence failed to show that he shared Overstreet's intent to kill. But "criminal intent may be inferred from presence, companionship, and conduct before, during and after the offense." Hardy v. State, 306 Ga. 654, 658 (1) (b) (832 SE2d 770) (2019) (citation and punctuation omitted). Here, Jordan agreed to take part in the home invasion as a member of the gang, he held the victims at gunpoint while Overstreet fatally shot Burch in the leg, he participated in the division of the proceeds from the robbery, he was observed laughing with Overstreet about the shooting of Burch, and he made a jailhouse admission about "the man [he] killed." A rational juror could conclude that Jordan shared

4

Overstreet's criminal intent, and was, therefore, guilty of murder as a party to the crime. See id.

Jordan also contends that the evidence is not legally sufficient to sustain his conviction for the armed robbery of Burch because the evidence showed that items were taken only from Hendricks. This claim, however, is belied by the record. Evidence was presented that Jordan took Burch's cell phones from Burch's immediate presence, as the phones were taken from a purse that was on the sofa on which Burch was seated while he was held at gunpoint. In addition, although it was not clear how the gang members obtained Burch's wallet, the jury could infer that the wallet was taken from Burch's home during the robbery. And even if the wallet was taken by Baker from the back of the house while Jordan and Overstreet were robbing Burch in the living room, the "immediate presence" required for a robbery is generally found where the item is taken outside of the physical presence of the victim "if what was taken was under [the victim's] control or his responsibility and if he was not too far distant." Benton v. State, 305 Ga. 242, 244-245 (1) (b) (824 SE2d

5

322) (2019) (citation and punctuation omitted). As a result, a rational jury could find that Jordan was guilty of the armed robbery of Burch.

Jordan does not dispute that the evidence is legally sufficient to sustain his other convictions, but consistent with our usual practice in murder cases, we nevertheless have reviewed the evidence and considered its sufficiency. Viewed in the light most favorable to the verdict, we conclude that the evidence adduced at trial is sufficient to authorize a rational trier of fact to find Jordan guilty of each of the crimes of which he was convicted. See Jackson v. Virginia, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).[5]

---

[5] Jordan also argues that the trial court erred when it failed to merge the aggravated assault upon Hendricks into the armed robbery. But the evidence showed that after the armed robbery was complete—and some length of time had passed while Jordan attempted to start Burch's truck—Overstreet returned to the home and shot Burch while he was seated next to Hendricks on the sofa. As a result, the armed robbery had ended by the time that this (second) aggravated assault occurred. And because the two crimes were not part of the same "act or transaction," they do not merge. See Oliphant v. State, 295 Ga. 597, 602 (4) (b) (759 SE2d 821) (2014) (aggravated assault did not merge with armed robbery where "after the armed robbery and initial shooting, the assailants ran away, but one then returned briefly and shot [the victim] in

2. Jordan claims that the trial court erred when it admitted extrinsic evidence of gang activity. According to Jordan, there was little probative value to evidence about the gang because his lawyer acknowledged in his opening statement that Jordan was a gang member. As a result, Jordan argues, OCGA § 24-4-403 ("Rule 403") "required" the exclusion of the evidence. But the lawyer's statements during his opening that Jordan was a member of "a gang" and that Jordan was "in a bind . . . with this gang" were not evidence, and the State still had to prove that Jordan was a member of a "criminal street gang" known as "G-Shine," as well as a connection between that gang and the crimes at issue. See OCGA § 16-15-3 (defining "criminal street gang" and "criminal gang activity"). The trial court did not abuse its discretion under OCGA § 24-4-403 when it admitted extrinsic evidence of gang activity. See <u>Anglin v. State</u>, 302 Ga. 333, 336 (3) (806 SE2d 573) (2017).[6]

_____

the leg").

[6] Jordan also suggests that the trial court erred because it did not explain on the record how it came to its conclusions about the admissibility of the

7

Jordan also asserts that his rights under the Confrontation Clause of the Sixth Amendment of the United States Constitution were violated by the admission of Overstreet's conviction for criminal gang activity related to an incident in Fitzgerald in 2015. But even if that conviction should not have been admitted, cf. State v. Jefferson, 302 Ga. 435, 441 (807 SE2d 387) (2017), it was cumulative of other (properly admitted) evidence about the 2015 incident. Jordan acknowledged in his custodial statement that he and Overstreet participated in the incident, and evidence was presented that Jordan himself was convicted of affray as a result of his involvement. As a result, any error in the admission of Overstreet's 2015 conviction for criminal gang activity was harmless beyond a reasonable doubt. See Collum v. State, 281 Ga. 719, 722 (2) (642 SE2d 640) (2007).

3. Finally, Jordan claims that he was denied the effective

---

extrinsic evidence of gang activity. See OCGA §§ 24-4-403 and 24-4-404. But Jordan did not object to the failure to make Rule 403 and Rule 404 findings on the record, and such a failure was not plain error. See Brewner v. State, 302 Ga. 6, 15 (III) (804 SE2d 94) (2017).

8

assistance of counsel during his trial. To prevail on a claim of ineffective assistance, Jordan must prove both that the performance of his lawyer was deficient and that he was prejudiced by this deficient performance. See <u>Strickland v. Washington</u>, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). To prove that the performance of his lawyer was deficient, Jordan must show that his lawyer performed his duties at trial in an objectively unreasonable way, considering all the circumstances and in the light of prevailing professional norms. See id. at 687-688 (III) (A). See also <u>Kimmelman v. Morrison</u>, 477 U. S. 365, 381 (II) (C) (106 SCt 2574, 91 LE2d 305) (1986). And to prove that he was prejudiced by the performance of his lawyer, Jordan must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Strickland</u>, 466 U. S. at 694 (III) (B). This burden is a heavy one, see <u>Kimmelman</u>, 477 U. S. at 382 (II) (C), and Jordan has failed to carry it.

First, Jordan asserts that his trial lawyer was ineffective

because he should have made a continuing objection to hearsay testimony presented by Overstreet's and Baker's girlfriends (who had participated in the crimes by driving the gang members to and from Burch's home). One of the women testified that Overstreet told Baker a few weeks before Burch's killing that they needed to "hit" Burch because he had been "flexing"; she overheard Overstreet tell Baker just before the robbery — while the gang members were preparing to go to Burch's house — that his firearm was a "Tec";[7] she heard several members of the gang (including Jordan) joking about the shooting as they divided the proceeds of the robbery immediately afterward; and Overstreet told her the next day — while the gang members were hiding out in a Tifton motel room — that he had killed Burch. The other woman testified that — while the gang members were dividing the proceeds of the robbery — several of them were "picking at" Jordan because he had been unable to start Burch's truck, Baker said he was the one who had

---

[7] Other evidence showed that Overstreet shot Burch with an Intratec nine-millimeter pistol.

kicked in Burch's front door, and Overstreet claimed to have killed Burch. The record shows that Jordan's trial lawyer *did* offer a hearsay objection to some of the women's hearsay testimony at trial, and to the extent that he failed to object, it would have been reasonable for him to conclude that the testimony was admissible under the co-conspirator exception and, therefore, unobjectionable on hearsay grounds. See OCGA § 24-8-801 (d) (2) (E). See also Kemp v. State, 303 Ga. 385, 395 (2) (b) (ii) (810 SE2d 515) (2018) ("[S]tatements that promote cohesiveness among, or provide reassurance to, other conspirators are made in furtherance of a conspiracy.").

Next, Jordan says that his trial lawyer should have requested a jury charge on the requirement for corroboration of accomplice testimony because the State relied heavily on the testimony of Overstreet's and Baker's girlfriends. See OCGA § 24-14-8. But it is well settled that an accomplice's testimony may be corroborated by the testimony of another accomplice. See Clark v. State, 296 Ga. 543, 547 (1) (d) (769 SE2d 376) (2015). Here, not only did the women

11

corroborate each other's testimony, but their testimony was corroborated by other evidence, including a jailhouse admission from Jordan. As a result, "it is unlikely that the omission of the accomplice corroboration instruction affected the outcome of [Jordan's] trial." Robinson v. State, 303 Ga. 321, 326 (3) (a) (812 SE2d 232) (2018) (citation and punctuation omitted).

Third, Jordan contends that his trial lawyer should have filed a general demurrer to the count of the indictment that charged him with home invasion because the indictment referred to Burch's "dwelling house" without specifying that Burch had "authority to be present" there. See OCGA § 16-7-5 (b) ("A person commits the offense of home invasion in the first degree when, without authority and with intent to commit a forcible felony therein and while in possession of a deadly weapon . . . he or she enters the dwelling house of another while such dwelling house is occupied by any person *with authority to be present therein.*" (Emphasis supplied)). But the indictment stated that Jordan entered "the dwelling house of another, Craigory Burch" while the house was occupied by Burch

12

himself. The allegation that the house "was the dwelling house of . . . Burch" necessarily implied that he had the authority to be present therein. As a result, this count of the indictment was sufficient to place Jordan on notice of the crime with which he was charged, and a general demurrer would not have been successful. See Budhani v. State, 306 Ga. 315, 320 (1) (b) (830 SE2d 195) (2019) ("[I]ndictment withstands a general demurrer and satisfies due process here because it alleges the essential elements of the offenses . . . and put [the defendant] on notice of the crimes with which he is charged and against which he must defend." (Citation and punctuation omitted)).

Jordan says his trial lawyer also should have moved to quash one of the two counts charging him with criminal gang activity, citing Anthony v. State, 303 Ga. 399, 404 (2) (b) (811 SE2d 399) (2018). According to Jordan, such a motion would have been successful because the two counts involved the same acts against the same victim.[8] But Jordan's trial lawyer would not have been able to

---

[8] Count 5 charged Jordan with criminal gang activity in connection with invading Burch's home, and Count 8 charged Jordan with criminal gang

rely on <u>Anthony</u> because it was decided after his trial and sentencing. Moreover, <u>Anthony</u> specifically declined to consider whether the Street Gang Act permits multiple convictions for criminal gang activity "when a person associated with a criminal street gang participates in criminal gang activity by committing multiple [and distinct] predicate crimes, even when those predicate crimes are committed in one place, at one time, and against one victim." Id. at 404 (2) (b) n.8. Here, the counts alleging criminal gang activity were related to separate offenses — home invasion and armed robbery — and Jordan's lawyer was not ineffective because he failed to pursue a novel theory of defense that was specifically not considered in a case that had not been decided at the time of his trial and sentencing. See <u>Esprit v. State</u>, 305 Ga. 429, 438 (2) (c) (826 SE2d 7) (2019).

<u>Judgment affirmed. All the Justices concur.</u>

---

activity in connection with the armed robbery of Burch.

14

DECIDED NOVEMBER 18, 2019.
Murder. Ben Hill Superior Court. Before Judge Hughes.
*Matthew K. Winchester*, for appellant.
*Bradford L. Rigby, District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Vanessa T. Sassano, Assistant Attorney General*, for appellee.