312 Ga. 363
FINAL COPY

S21A0686.  BAKER v. THE STATE.

COLVIN, Justice.

Following a jury trial, Nathaniel Baker was convicted of felony murder and other offenses in connection with crimes committed against Craigory Burch, Jr., Jasmine Hendricks, and C. B., a minor child.[1]  On appeal, Baker argues that the evidence presented at trial

---

[1] On April 4, 2016, a Ben Hill County grand jury indicted Baker along with six co-defendants on a fifteen-count indictment.  Baker was charged as follows:  malice murder of Burch (Count 1), felony murder of Burch predicated on aggravated assault (Count 2), aggravated assault of Burch (Count 3), home invasion (Count 4), two counts charging a violation of Georgia's Street Gang Terrorism and Prevention Act ("Gang Act"), predicated on home invasion and armed robbery (Counts 5 and 8), two counts of armed robbery (Count 6 — Burch, Count 7 — Hendricks), two counts of aggravated assault (Count 9 — Hendricks, Count 10 — C. B.), four counts of possession of a firearm during the commission of a felony (Counts 11 through 14), and one count of possession of a firearm by a convicted felon (Count 15).

Baker was tried alone from January 23 through January 27, 2017.  The jury acquitted Baker of malice murder but returned guilty verdicts on Counts 2 through 14, and the trial court nolle prossed the remaining firearm charge.  On February 14, 2017, Baker was sentenced as a recidivist pursuant to OCGA § 17-10-7 (a) to life in prison without the possibility of parole for felony murder (Count 2), concurrent life sentences for home invasion and both armed robbery charges (Counts 4, 6, and 7), 20 years concurrent for both counts charging a violation of the Gang Act (Counts 5 and 8), 20 years concurrent for the two

was insufficient to support his convictions and that the trial court erred by allowing the State to present evidence of criminal gang activity. We affirm.

1. Appellant contends that the evidence presented at trial was insufficient to sustain his convictions for the felony murder of Burch and the aggravated assaults of Hendricks and C. B. When evaluating the sufficiency of evidence as a matter of constitutional due process, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime

counts of aggravated assault against Hendricks and C. B. (Counts 9 and 10), and five years on three of the firearm counts to run consecutive to the murder sentence but concurrent to each other (Counts 11, 12, and 14). The remaining aggravated assault and firearm charges were merged for sentencing purposes.

Baker filed a motion for new trial on March 2, 2017. Baker amended his motion for new trial through new counsel on June 7, 2019, and filed a motion for resentencing that same day. The trial court heard argument on both motions on December 30, 2019, and entered two orders on January 23, 2020. In the first order, the trial court granted the motion for resentencing in part and resentenced Baker on the two Gang Act counts, reducing the sentences for each count to 15 years. In the second order, the trial court denied Baker's amended motion for new trial.

On June 25, 2020, Baker filed a motion for an out-of-time appeal, which the trial court granted on July 2, 2020. The appeal was docketed to the April 2021 term of this Court, and oral argument was heard on May 18, 2021.

beyond a reasonable doubt." (Citation and emphasis omitted.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). "This Court does not reweigh evidence or resolve conflicts in testimony; instead, evidence is reviewed in a light most favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence." (Citation and punctuation omitted.) *Hayes v. State*, 292 Ga. 506, 506 (739 SE2d 313) (2013).

Viewed in this light, the evidence presented at trial showed that, at all relevant times, Baker was a member of the "G-Shine Bloods," a subsect of the Bloods gang, along with Dabrentise Overstreet, Wayne Jordan,[2] Anjevell Johnson, Earnest Holcomb, and Rosalyn Swain. On the evening of January 20, 2016, Overstreet, Jordan, Johnson, Holcomb, and Swain were hanging out with Katherine Tillman at her house when the group decided to commit a robbery. They settled on robbing Burch, whom the group

---

[2] This Court affirmed Jordan's convictions and sentences in *Jordan v. State*, 307 Ga. 450 (836 SE2d 86) (2019).

3

knew had recently won over $400,000 playing the lottery and had used a portion of his winnings to purchase a house where he lived with Hendricks and their three children. Overstreet, Johnson, and Baker had previously discussed robbing Burch because they believed he had been "showing off" his lottery winnings.

Overstreet called Baker, informed him of the plan, and asked Baker to bring a weapon. Baker and his girlfriend, Keyana Dyous, arrived at Tillman's house around 9:00 p.m., and Baker opened the trunk of his car to show Overstreet an Intratec 9mm pistol that Baker was known to carry. The two men then entered Tillman's house and further discussed the plan to rob Burch. Soon thereafter, the group headed out in two vehicles to Burch's house. Initially, Dyous drove Baker and Johnson, while Swain drove Holcomb and Overstreet. On the drive, the two cars pulled into a parking lot so that Overstreet could get into Dyous's car with Baker and Jordan. Once together, the three men put on ski masks, tied white t-shirts around their faces to obscure their identities, and directed Swain and Holcomb to drive to a separate location and wait until the

4

robbery was complete. They also told Dyous that they would call her when they needed to be picked up.

Burch and Hendricks were sitting in their living room with two of their three children when Baker, Overstreet, and Jordan burst through the front door with their guns drawn. Baker went to the back of the house while Overstreet and Jordan held Burch and Hendricks at gunpoint and demanded money. Burch handed the men his wallet and said, "Don't do it in front [of] my kids." Overstreet ignored Burch's plea and fired three shots into Burch's legs while his two-year-old son, C. B., sat on his lap. The children began to scream, and Jordan went through Hendricks' purse, removing three cell phones and a wallet. Jordan then fled through the front door while Overstreet and Baker exited the house through the back. As Hendricks was attempting to help Burch, she saw Overstreet walk back to the front door of the house. She testified that he "opened the door, stood at the door, and shot [Burch] some more." Overstreet then turned the weapon on Hendricks, but the gun did not fire. Overstreet stated that he "ran out of bullets" before

5

he turned around and left.

The gang members, including Baker, fled the scene in their two getaway cars, with Jordan mocking Hendricks as she screamed for help. The group reconvened at Tillman's house and divided the stolen property amongst themselves. Overstreet wrapped a gun in a white t-shirt and threatened to murder anyone who talked about the robbery.

When officers arrived at the scene of the shooting, they found Burch dead on the couch. The medical examiner testified that Burch had died as a result of his numerous gunshot wounds. Officers located five 9mm bullets and eleven shell casings inside the house and sent the items to the GBI for further testing. A fingerprint lifted from the back door handle was later matched to Baker's thumb, and ballistics testing determined that the bullets and shell casings found at the scene were all fired from an Intertec 9mm pistol.[3] Subsequent investigation also revealed that Baker and his co-defendants used some of the proceeds from the robbery to pay for a motel room in

_____

[3] The murder weapon was never located.

Moultrie and gas in Tifton, where Burch's credit card was found on the side of the road months later.

Phone records introduced at trial showed that Burch's stolen phone made several calls after his death to a bank where Burch had an account, and that Baker's phone and Overstreet's phone were in frequent contact with one another on the day of the murder. Finally, after Baker's arrest, he spoke with law enforcement officers. While he initially denied any involvement in the crimes, he eventually admitted to bringing a gun to Overstreet; kicking in the door of the Burch residence; witnessing Overstreet shoot Burch in the legs; and leaving the residence with Overstreet, after which Overstreet told Baker that he was going to go back into the house to kill Burch.

Baker claims that the evidence was legally insufficient to support his convictions for the felony murder of Burch and the aggravated assault of Hendricks because the State failed to show that Baker was a party to the crimes when Overstreet re-entered the home to shoot Burch and attempt to shoot Hendricks. However, "criminal intent is a question for the jury, and it may be inferred

7

from that person's conduct before, during, and after the commission of the crime." *Jones v. State*, 292 Ga. 656, 658 (1) (a) (740 SE2d 590) (2013). Also, "[w]hile mere presence at the scene of a crime is not sufficient evidence to convict one of being a party to a crime, criminal intent may be inferred from presence, companionship, and conduct before, during, and after the offense." (Citation and punctuation omitted.) *Parks v. State*, 304 Ga. 313, 315-316 (1) (a) (818 SE2d 502) (2018).

Here, the evidence presented at trial showed that Baker's phone was in frequent contact with Overstreet's phone on the day of the crimes, Baker agreed to take part in the robbery and home invasion, he rummaged through the home while his co-defendants held the victims at gunpoint, he continued to search the home after Overstreet fired the first three shots into Burch's legs, he heard Overstreet state that he was going back to the house to kill Burch, and he returned to Tillman's house with his co-defendants and participated in the division of the proceeds from the robbery. Finally, the evidence showed that the murder weapon was an

Intratec 9mm pistol and that Baker brought such a weapon to be used in the robbery.

Based on the foregoing, a rational jury could conclude that Baker shared a common criminal intent with Overstreet, and the jury was authorized to find Baker guilty beyond a reasonable doubt of the felony murder of Burch and the aggravated assault of Hendricks. See *Jackson*, 443 U. S. at 319. See also OCGA § 16-2-20 (defining "party to a crime"); *Lofton v. State*, 309 Ga. 349, 353 (1) (846 SE2d 57) (2020) ("[A] shooting is a reasonably foreseeable consequence of an armed robbery and thus a party to an armed robbery is culpable for felony murder if a fatal shooting occurs."); *Jordan v. State*, 307 Ga. 450, 452 (1) (836 SE2d 86) (2019) (concluding evidence was sufficient for Jordan's convictions for the malice murder of Burch and the aggravated assault of Hendricks based on a shared criminal intent with Overstreet).[4]

---

[4] At oral argument, Baker claimed that his role in the crimes ended when he exited Burch's home. However,

> if a defendant has knowledge of the crime which is intended and

Baker also contends that the evidence was insufficient to sustain his conviction for the aggravated assault of C. B. because the two-year-old child could not testify at trial and because the State failed to present any evidence that C. B. was placed in reasonable apprehension of immediately receiving a violent injury. We disagree.

> A person commits the offense of aggravated assault when he uses a deadly weapon to commit an act which places another [person] in reasonable apprehension of immediately receiving a violent injury. Whether a victim has been placed in reasonable apprehension of injury is a question of fact, which may be established by indirect or circumstantial evidence. The presence of a deadly weapon would normally place a victim in reasonable apprehension of being injured violently.

(Citation and punctuation omitted.) *Stewart v. State*, 299 Ga. 622,

---

shares in the criminal intent of the principal actor, that defendant is an aider and abettor. Consequently, if such defendant is at the scene and does not oppose the commission of the crime, the trier of fact may consider such conduct in connection with prior knowledge and is authorized to conclude that the defendant assented and lent approval to the commission of the crime, and thus, was aiding and abetting it.

(Citation omitted.) *State v. Cash*, 302 Ga. 587, 595-596 (807 SE2d 405) (2017). For the reasons discussed above, the jury could reasonably infer from Baker's conduct that he assented to Overstreet's return to the scene of the crimes to murder Burch and assault Hendricks.

10

626 (2) (a) (791 SE2d 61) (2016).  See also *Bostic v. State*, 294 Ga. 845, 847 (1) (757 SE2d 59) (2014) ("[T]he failure of a victim of an assault to testify at trial does not necessarily result in the evidence against the defendant being insufficient.").  Here, in addition to Hendricks' extensive testimony concerning what occurred inside Burch's home, the State presented testimony from Hendricks' neighbor that, after she heard the first few gunshots, she could hear Hendricks' children screaming and crying.  A jury could infer from this that C. B. was placed in reasonable apprehension and, therefore, this evidence authorized a rational jury to find Baker guilty beyond a reasonable doubt of the aggravated assault of C. B. See *Jackson*, 443 U. S. at 319.  See also *Gaither v. State*, 312 Ga. App. 53, 54 (1) (717 SE2d 654) (2011) ("[T]estimony that the children were crying and screaming when appellant fired into the group was sufficient for the jury to conclude that they, too, had a reasonable apprehension of receiving a violent injury." (Citation and punctuation omitted.) (quoting *Robertson v. State*, 245 Ga. App. 649, 651 (1) (538 SE2d 755) (2000) (evidence that two children (ages one

11

and three) began crying after being shot at while inside a vehicle was sufficient to support conviction for aggravated assault on children)).

2. Baker alleges, and the State concedes, that the trial court erred by allowing the State to introduce the criminal convictions of third-party gang members[5] under OCGA § 16-15-9.[6] See *State v. Jefferson*, 302 Ga. 435, 443 (807 SE2d 387) (2017) (holding the

---

[5] At trial, the State called two law enforcement officers to testify about prior incidents of criminal activity committed by other members of the G-Shine Bloods, but not Baker. Specifically, one officer testified concerning a shooting that occurred in December 2015 involving Overstreet, Johnson, and Jordan, and the State tendered certified copies of the convictions stemming from that shooting. A second officer testified about a February 2016 car crash involving Overstreet and Johnson that occurred after a drive-by shooting. Baker argues that the trial court erred by allowing the introduction of the third-party convictions. He further argues, in passing, that the trial court erred by admitting the officers' testimony concerning the events of December 2015 and February 2016. The State concedes that the trial court erred in admitting the third-party convictions, but does not address the additional testimonial evidence. For the purposes of our analysis, we will assume, without deciding, that the admission of the officers' testimony was also error.

[6] OCGA § 16-15-9 states:

> For the purpose of proving the existence of a criminal street gang and criminal gang activity, the commission, adjudication, or conviction of any offense enumerated in paragraph (1) of Code Section 16-15-3 by any member or associate of a criminal street gang shall be admissible in any trial or proceeding. Evidence offered under this Code section shall not be subject to the restrictions in paragraph (22) of Code Section 24-8-803.

12

portion of OCGA § 16-15-9 allowing for the introduction of third-party convictions at trial to be unconstitutional on its face for violating a defendant's confrontation rights).[7]  However, the State argues that the error was harmless beyond a reasonable doubt.  We agree.  It is well settled that

> [b]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt. Reversal is required where there is a reasonable possibility that the improperly admitted evidence contributed to the verdict.

(Citation and punctuation omitted.) *Wingate v. State*, 296 Ga. 21, 27 (2) (c) (764 SE2d 833) (2014).

Here, the State presented ample evidence at trial that Baker was a member of the "G-Shine Bloods," a criminal street gang, and evidence connecting "G-Shine" to the crimes at issue in this case. See OCGA § 16-15-3 (defining "criminal street gang" and "criminal gang activity").  At trial, Swain testified to her knowledge of the gang's membership and hierarchy, much of which she learned directly from Overstreet.  Dyous also testified to the existence of the

---

[7] The *Jefferson* opinion was issued after Baker's trial.

gang, how they ran meetings, and the various roles everyone played, including Baker's role as the "enforcer" or "protector." Even though Baker characterized himself as a "former" member of G-Shine during his custodial interview with law enforcement officials, other evidence at trial contradicted Baker's statement. For example, numerous photographs posted to Baker's social media page prior to and after the crimes in this case depicted him wearing a red bandana and holding up gang signs commonly associated with the Bloods. Moreover, Baker had typed "G-Shine for Life" over one of these photographs. Finally, the State presented evidence at trial that, on the night of the murder, the members of G-Shine convened a gang meeting where they planned the armed robbery of Burch, and that, on a prior occasion, Overstreet, Baker, and Jordan discussed robbing Burch because they believed he was showing off his winnings. Because this evidence was largely cumulative of other evidence already introduced regarding the G-Shine gang's criminal activity, and its prejudicial effect against Baker was limited because he was not involved in the prior acts, we cannot say that there is a

14

reasonable possibility that the improperly admitted third-party evidence contributed to the verdict.

*Judgment affirmed. All the Justices concur.*

Decided September 8, 2021.

Murder. Ben Hill Superior Court. Before Judge Hughes.

*Betsey L. Tate*, for appellant.

*Bradford L. Digby, District Attorney, Jennifer D. Hart, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Mark S. Lindemann, Assistant Attorney General*, for appellee.