S08A1928. RODRIGUEZ et al. v. THE STATE.
(671 SE2d 497)

CARLEY, Justice.

Gilberto Rodriguez and Efrain Rodriguez (Appellants) and several others were jointly indicted for multiple counts, including alleged violations of the Georgia Street Gang Terrorism and Prevention Act (Act), OCGA § 16-15-1 et seq. The indictment charged that both Appellants "did participate in criminal street gang activity by committing a crime of violence, to wit: aggravated assault while associated with a criminal street gang . . . ." A separate count charged Efrain Rodriguez alone with participation "in criminal street gang activity by possession [of] a pistol in violation of OCGA § 16-11-132 while associating with a criminal street gang . . . ." These two charges also served as the predicate offenses for two counts of felony murder. All four counts charging criminal street gang activity are based upon OCGA § 16-15-4 (a), which makes it "unlawful for any person employed by or associated with a criminal street gang to conduct or participate in criminal street gang activity through the commission of any offense enumerated in paragraph (1) of Code Section 16-15-3." In a "motion challenging constitutionality of OCGA § 16-15-4," Appellants sought dismissal of those four counts. After conducting a hearing, the trial court entered a written order finding that the Act is constitutional and denying the motion

---

[3] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); OCGA § 24-4-6.

on all grounds. Appellants appeal pursuant to our grant of their application for interlocutory appeal. They challenge the Act as infringing upon the First Amendment right to freedom of association and as facially vague and overly broad under the Federal and Georgia Constitutions.

1. " ' "(A) solemn act of the legislature is presumed to be constitutional. (Cit.)" (Cit.)' " *Bohannon v. State*, 269 Ga. 130, 131 (2) (497 SE2d 552) (1998). "The rules of statutory construction require this court to construe a statute as valid when possible. [Cit.]" *Gravely v. Bacon*, 263 Ga. 203, 206 (2) (429 SE2d 663) (1993). Consistent with this principle is the following explicit statement by the legislature regarding its intent:

> It is not the intent of this [Act] to interfere with the exercise of the constitutionally protected rights of freedom of expression and association. The General Assembly recognizes the constitutional right of every citizen to harbor and express beliefs on any lawful subject whatsoever, to associate lawfully with others who share similar beliefs, to petition lawfully constituted authority for a redress of perceived grievances, and to participate in the electoral process. The General Assembly, however, further finds that the State of Georgia is in a state of crisis which has been caused by violent street gangs whose members threaten, terrorize, and commit a multitude of crimes against the peaceful citizens of their neighborhoods. These activities, both individually and collectively, present a clear and present danger to public order and safety and are not constitutionally protected. The General Assembly finds that there are criminal street gangs operating in Georgia and that the number of gang related murders is increasing. It is the intent of the General Assembly in enacting this chapter to seek the eradication of criminal activity by street gangs by focusing upon patterns of criminal gang activity and upon the organized nature of street gangs which together are the chief source of terror created by street gangs.

OCGA § 16-15-2 (a), (b), (c). There is " 'no better source' " than such a legislative expression of an act's purpose " 'to which a court may go for the purpose of finding the legislature's meaning of an act passed by it.' [Cit.]" *Mason v. Home Depot U.S.A.*, 283 Ga. 271, 278 (3) (658 SE2d 603) (2008). Indeed, other jurisdictions construing anti-gang statutes have recognized the importance of such a legislative delineation of compelling state interests and explicit exclusion of constitutionally protected activity. Beth Bjerregaard, *The Constitutionality*

*of Anti-Gang Legislation*, 21 Campbell L. Rev. 31, 37-38 (II) (B) (1998).

States have also avoided vagueness and overbreadth challenges to anti-gang legislation by clearly defining key terms. Bjerregaard, supra at 41-42 (III) (A), (B). OCGA § 16-15-4 must be read in conjunction with the definitions of "criminal gang activity" and "criminal street gang" in OCGA § 16-15-3. "Criminal gang activity" is defined as "the commission, attempted commission, conspiracy to commit, or solicitation, coercion, or intimidation of another person to commit any of [certain enumerated] offenses on or after July 1, 2006 . . . ." OCGA § 16-15-3 (1).

> "Criminal street gang" means any organization, association, or group of three or more persons associated in fact, whether formal or informal, which engages in criminal gang activity as defined in paragraph (1) of this Code section. The existence of such organization, association, or group of individuals associated in fact may be established by evidence of a common name or common identifying signs, symbols, tattoos, graffiti, or attire or other distinguishing characteristics. Such term shall not include three or more persons, associated in fact, whether formal or informal, who are not engaged in criminal gang activity.

OCGA § 16-15-3 (2). Utilizing these definitions, Appellants contend that OCGA § 16-15-4 (a) makes it "unlawful for any person employed by or associated with a" group of three or more persons which engages in the commission of any enumerated offense "to conduct or participate in" the commission of any enumerated offense "through the commission of any offense enumerated . . . ." Accordingly, Appellants argue that current OCGA § 16-15-4 (a), unlike previous versions, does not contain any requirement that the defendant actively participated in the group, had any knowledge of its illegal activities, or had any specific intent to further those activities. Appellants admit that this interpretation "is highly circular," but insist that any other construction would constitute a rewriting of the statute.

"The various provisions of a statute 'should be viewed in harmony and in a manner which will not produce an unreasonable or absurd result. (Cits.)' [Cit.]" *Lindsey v. State*, 277 Ga. 772, 774 (1) (596 SE2d 140) (2004). The trial court found that Appellants "parse words in a tortuous manner . . . ." Appellants' proposed construction of OCGA § 16-15-4 (a) makes the middle portion, "to conduct or participate in criminal street gang activity," meaningless or redundant, and illogically precludes that portion from providing any nexus between the defendant's commission of an enumerated offense and

his membership in a criminal street gang. Because any such language is absent from the statute construed in *State v. O. C.*, 748 S2d 945 (Fla. 1999), cited by Appellants, that case is distinguishable. The Florida statute examined in *O. C.*, which enhanced the degree of a crime for sentencing purposes if the defendant was a gang member at the time of the crime's commission, violated substantive due process because it did not contain any nexus between the particular criminal act and the gang membership.

Although the enumeration of offenses in OCGA § 16-15-3 (1) is essentially incorporated into OCGA § 16-15-4 (a) at three different points, that fact does not make the latter statute redundant. At each of those points, the enumeration of offenses is relevant in a different manner. It is relevant to the definition of "criminal street gang" in OCGA § 16-15-3 (2) in that the "group of three or more persons associated in fact" must engage in "criminal gang activity," which is a phrase that includes the list of enumerated offenses in OCGA § 16-15-3 (1). However, the phrase "criminal gang activity" is itself broader than the commission of an enumerated offense and includes the unlawful procurement of the offense. More importantly, the purpose of OCGA § 16-15-3 (1) is to define the "activity" and not the "actor." In the definition of "criminal street gang" in paragraph (2), the actor is the group acting through its members. That phrase is contained in the reference to "criminal street gang activity" in OCGA § 16-15-4 (a), which is not identical to the phrase "criminal gang activity" as defined in OCGA § 16-15-3 (1). Thus, we conclude that the "criminal street gang activity" mentioned in OCGA § 16-15-4 (a) does not refer to the commission of an enumerated offense by a single individual acting alone.

Furthermore, the use of the verbs "conduct" and "participate" confirm that the middle portion of OCGA § 16-15-4 (a) is referring to the "activity" of the group. The primary meanings of the verb "conduct" are "1. To direct the course of; manage or control. 2. To lead or guide." *The American Heritage Dictionary of the English Language* 393 (3rd ed. 1992). See also *The New Shorter Oxford English Dictionary* 473 (1993) ("Lead, guide"). The meanings of the verb "participate" are "1. To take part in something . . . . 2. To share in something . . . ." *The American Heritage Dictionary of the English Language*, supra at 1319. See also *State v. Stallings*, 778 NE2d 1110, 1114 (Ohio App. 2002) (" 'to take part in something (as an enterprise or activity)' "); *The New Shorter Oxford English Dictionary*, supra at 2109 ("Take a part or share in an action or condition"). Especially in the context of OCGA § 16-15-4 (a), both of these words imply the presence of others who are managed, controlled, led or guided in the "criminal street gang activity" by the defendant or who take part in or share in that activity with the defendant. See *Webster's Third New*

*Intl. Dictionary of the English Language Unabridged* 1646 (1966) ("participate" defined as "to take part in something (as an enterprise or activity) usu. in common with others").

Accordingly, the middle portion of OCGA § 16-15-4 (a) is most naturally read to require that the defendant conducted or participated in the criminal gang activity of the criminal street gang with which he was associated. Management of or participation with others in that criminal street gang activity necessarily implies knowledge of the gang's criminal activities and a specific intent to further its criminal purposes. See *Chancey v. State*, 256 Ga. 415, 427 (4) (B) (349 SE2d 717) (1986) (intent and scienter implicit in similar state RICO statute); *Helton v. State*, 624 NE2d 499, 508 (I) (B) (2), fn. 13 (Ind. App. 1993) (construing an anti-gang statute to require that the gang member have a specific intent to further the group's criminal conduct). Compare OCGA § 16-15-4 (b) (which is not satisfied by general knowledge of any type of criminal street gang activity, but rather the explicit terms of which more narrowly require knowledge that individual members of the criminal street gang have actually committed one or more enumerated offenses); OCGA § 16-15-4 (c) (expressly requiring that the defendant have an "intent to maintain or increase his or her status or position in a criminal street gang").

The trial court correctly found that "[t]he necessary and required element that [Appellants] don't mention is that there must be some nexus between the act and an intent to further street gang activity." That nexus is provided by use of the preposition "through" in OCGA § 16-15-4 (a). Furthermore, the last portion of the statute, beginning with that preposition, indicates that the means of participation in or management of criminal street gang activity is not merely the unlawful procurement of an enumerated offense, but rather consists of the actual commission of an enumerated offense by the defendant himself. Therefore, under its most natural reading, OCGA § 16-15-4 (a) requires gang participation by the defendant which is active by any measure.

Our interpretation of OCGA §§ 16-15-3 and 16-15-4 (a) is the most consistent with the above-quoted legislative statement of intent "to seek the eradication of criminal activity by street gangs by focusing upon patterns of criminal gang activity and upon the organized nature of street gangs . . . ." OCGA § 16-15-2 (c). Having construed the Act, we turn to a consideration of Appellants' particular constitutional claims.

2. Appellants contend that OCGA §§ 16-15-3 and 16-15-4 (a) are unconstitutionally vague in several respects.

A law may be unconstitutionally vague if it fails to provide the kind of notice that will enable ordinary people to

conform their conduct to the law or if it fails to provide sufficient guidelines to govern the conduct of law enforcement authorities, thus making the law susceptible to arbitrary and discriminatory enforcement. [Cits.]

*In re D. H.*, 283 Ga. 556-557 (2) (663 SE2d 139) (2008).

The " 'prohibition against excessive vagueness does not invalidate every statute which a reviewing court believes could have been drafted with greater precision. Many statutes will have some inherent vagueness for "(i)n most English words and phrases there lurk uncertainties." . . .' (Cit.)" [Cit.]

*Lindsey v. State*, supra at 773 (1).

Vagueness challenges to anti-gang legislation have consistently been unsuccessful where the statute, as properly construed, requires active participation in the gang with knowledge of its criminal behavior, imposes a specific intent requirement, or specifically defines critical terms. Bjerregaard, supra at 34 (II) (A), 41 (III) (A). See also *Helton v. State*, supra at 506 (I) (A); *State v. Walker*, 506 NW2d 430, 432 (I) (Iowa 1993). As explained in Division 1, all three of these aspects are present in OCGA §§ 16-15-3 and 16-15-4 (a).

Appellants specifically complain that these statutes do not provide any guidance on the following critical questions: (1) whether the same predicate act can be used to prove both the existence of a qualifying "gang" and the defendant's prohibited conduct; (2) whether the group must be an ongoing group rather than an ephemeral one; and, (3) how closely the defendant must be associated with the group. Regarding the first question, it is apparent from the statutory scheme, as discussed in Division 1, that the commission of an enumerated offense by the defendant is not itself sufficient to prove the existence of a "criminal street gang." If it were sufficient, the nonsensical result would be that a member of any legitimate group could violate the Act merely by committing an enumerated offense. Furthermore, as already noted, to constitute a "criminal street gang," a group of three or more persons must "engage" in "criminal gang activity" through its members. An isolated offense by a single member does not fulfil that requirement. We additionally observe that OCGA § 16-15-3 (2) does not in any way indicate that this particular requirement is fulfilled merely by "evidence of a common name or common identifying signs, symbols, tattoos, graffiti, or attire or other distinguishing characteristics." See *State v. Ochoa*, 943 P2d 814, 821 (Ariz. App. 1997). As for the second question, the meaning of the verb "engages" as used in OCGA

§ 16-15-3 (2) is "to begin and carry on an enterprise . . . ." *Webster's Third New Intl. Dictionary of the English Language Unabridged*, supra at 751. Thus, although the "criminal street gang" may have existed for a short time, its "criminal gang activity" or plans for continuation of that activity must be ongoing at the time of the defendant's commission of an enumerated offense. With regard to the third question, Appellants argue that OCGA § 16-15-4 (a) does not require that the defendant's participation in the gang be active. However, we rejected this argument in Division 1. See *Chancey v. State*, supra at 427-428 (4) (D). The defendant's participation must not only be active, it must consist of the commission of an enumerated offense.

Reading OCGA § 16-15-4 (a) according to the natural and obvious import of its language and in conjunction with the specific definitions in OCGA § 16-15-3, we conclude that it provides a sufficiently definite warning to persons of ordinary intelligence of the prohibited conduct and that it is not susceptible to arbitrary and discriminatory enforcement. See *In re D. H.*, supra at 557 (2); *State v. Fielden*, 280 Ga. 444-445 (629 SE2d 252) (2006); *Chancey v. State*, supra at 428 (4) (D) (rejecting a vagueness challenge to the state RICO provision in OCGA § 16-14-4 (b), which is very similar in structure to, and shares some of the same language with, OCGA § 16-15-4 (a)).

3. Appellants' claim that the Act is overly broad is heavily based upon their proposed construction of OCGA § 16-15-4 (a), which was rejected in Division 1. "The authoritative construction of statutes by state courts controls overbreadth analysis. [Cits.]" *Helton v. State*, supra at 508 (I) (B) (2) (citing *Osborne v. Ohio*, 495 U. S. 103, 113-114 (110 SC 1691, 109 LE2d 98) (1990)). Furthermore, other jurisdictions have consistently rejected overbreadth challenges to anti-gang legislation by relying on some combination of the following factors: the aforementioned requirements of active participation with knowledge and specific intent, a legislative declaration of a compelling state interest, a legislative exclusion of constitutionally protected activities, and definitions of key terminology. Bjerregaard, supra at 42 (III) (B). See also *State v. Bennett*, 782 NE2d 101, 111 (V) (Ohio App. 2002); *Helton v. State*, supra at 508-511 (I) (B) (2). Each of these factors is present in this case under our construction of the Act. As a result, we conclude that OCGA § 16-15-4 (a) does not reach a substantial amount of constitutionally protected conduct and, therefore, is not unconstitutionally overbroad. See *Mann v. State*, 278 Ga. 442, 444 (3) (603 SE2d 283) (2004); *Bohannon v. State*, supra at 136 (4); *State v. Miller*, 260 Ga. 669, 674 (2) (398 SE2d 547) (1990). Compare *State v. Fielden*, supra at 448 ("Curing the overbreadth in

OCGA § 16-11-34 (a) would be less a matter of reasonable judicial construction than a matter of substantial legislative revision.'').

4. Contrary to Appellants' further contention, OCGA § 16-15-4 (a), as properly construed, does not directly or indirectly infringe upon the First Amendment right to freedom of association. ''[T]he act of associating with compatriots in crime is not a protected associational right. [Cits.]'' *Helton v. State*, supra at 506 (I) (A). To support a conviction, the accused must be shown to have conducted or participated in criminal street gang activity through the commission of ''an actual criminal act. Mere association is insufficient.'' *State v. Walker*, supra at 433 (II). OCGA § 16-15-4 (a) ''comports with . . . due-process requirements . . . because it punishes conduct, not association.'' *State v. Bennett*, supra at 110 (IV) (B). It

> does not unconstitutionally criminalize membership in an organization because ''the statute does not impermissibly establish guilt by association alone(.)'' [Cits.] Moreover, the right to association . . . does not provide protection to those organizations that commit a felony. [Cit.]

*State v. Stallings*, supra at 1116. Criminal gang activity ''is not protected activity even when committed by a group exercising their constitutional right to free association. [Cit.]'' *Helton v. State*, supra at 509 (I) (B) (2).

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 12, 2009.

*Gerard B. Kleinrock, Corrine M. Mull, Daryl W. Queen, LeeAnne Anthony, Andrew R. Lynch*, for appellants.

*Gwendolyn Keyes Fleming, District Attorney, Barbara B. Conroy, Michael S. Carlson, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Bondurant, Mixson & Elmore, John E. Floyd*, for appellee.

*Oxendine & Associates, Lee Wall Oxendine Shafer, Donald E. Henderson*, amici curiae.