In the Supreme Court of Georgia

Decided:    January 19, 2016

S15A1511. HAYES v. THE STATE.

BLACKWELL, Justice.

David O. Hayes was tried by a Cobb County jury and convicted of the murder of Justin Brown, among other crimes. Hayes appeals, contending only that the evidence is legally insufficient to sustain his convictions. Upon our review of the record and briefs, we see no error, and we affirm.[1]

---

[1] The crimes were committed on August 2, 2007. Along with Milton Blackledge, Miracle Nwakanma, Louis Francis, and Muhammed Abdus-Salaam, Hayes was indicted on December 21, 2007, and all five men were charged with malice murder, three counts of felony murder, one count of conspiracy to commit armed robbery, four counts of aggravated assault, one count of violation of the Georgia Street Gang Terrorism and Prevention Act, and one count of unlawful possession of a firearm during the commission of a crime. In addition, Hayes and Nwakanma were charged with unlawful possession of a firearm by a convicted felon and felony murder predicated on unlawful possession of a firearm by a convicted felon. Francis also was charged with possession of cocaine and possession of less than one ounce of marijuana, but those charges were later put on the dead docket. The prosecution elected not to proceed with the case against Abdus-Salaam until a subsequent date, and the trial of the remaining four co-defendants commenced on May 4, 2009. The trial court directed a verdict of acquittal for each defendant on the charge of aggravated assault upon Charles Reams, and the jury returned its verdict on May 20, 2009, finding each defendant not guilty of malice murder and guilty on all the other remaining counts. Hayes, Nwakanma, and Francis each was sentenced to imprisonment for life for the felony murder of Brown predicated on the aggravated assault upon him, a concurrent term of imprisonment for ten years for conspiracy to commit armed robbery, a consecutive term of imprisonment for

Hayes claims that the evidence is legally insufficient to sustain his convictions for felony murder in the commission of an aggravated assault upon Brown, the aggravated assaults of Scott Keller and Josh Washington, and violation of the Georgia Street Gang Terrorism and Prevention Act, OCGA § 16-15-1 et seq.[2] Viewed in the light most favorable to the verdict, the evidence

twenty years for aggravated assault upon Scott Keller, a consecutive term of imprisonment for ten years for aggravated assault upon Josh Washington, a concurrent term of imprisonment for fifteen years for violation of the Georgia Street Gang Terrorism and Prevention Act, and a consecutive term of imprisonment for five years for unlawful possession of a firearm during the commission of a crime. Hayes and Nwakanma were sentenced to an additional concurrent term of imprisonment for five years for unlawful possession of a firearm by a convicted felon. The verdict as to the other counts of felony murder was vacated by operation of law, Malcolm v. State, 263 Ga. 369, 371-372 (4) (434 SE2d 479) (1993), and the remaining aggravated assault (upon Brown) merged with the felony murder (of Brown). It appears from the record that Blackledge was sentenced in the same way as Francis, and Abdus-Salaam later pled guilty to reduced charges and was sentenced to a total of thirty years, with fifteen to be served in custody. Hayes timely filed a motion for new trial on June 24, 2009, and he amended it on March 5, 2012. The trial court denied his motion on May 8, 2013, and Hayes timely filed a notice of appeal on June 6, 2013. The case was docketed in this Court for the September 2015 term and was submitted for decision on the briefs.

[2] Hayes does not dispute the legal sufficiency of the evidence as to conspiracy to commit armed robbery, unlawful possession of a firearm during the commission of a crime, or unlawful possession of a firearm by a convicted felon. We independently have reviewed the evidence that pertains to those crimes, and we are satisfied that the evidence is sufficient to sustain those convictions. See Jackson v. Virginia, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). Hayes does complain that the evidence is insufficient to sustain any conviction for felony murder in the commission of conspiracy to commit armed robbery, felony murder in the commission of a violation of the Georgia Criminal Street Gang Terrorism and Prevention Act, felony murder in the commission of unlawful possession of a firearm by a convicted felon, and the separate count of aggravated assault upon Brown. But Hayes was not sentenced for any of these crimes, and no judgment of conviction as to these

2

shows that on the evening of August 1, 2007, Hayes, Miracle Nwakanma, Louis Francis, Muhammad Abdus-Salaam, and Milton Blackledge made plans to rob Dylan Wattecamps. Early on the morning of August 2, Hayes gave Nwakanma a .380 caliber pistol (which Nwakanma later gave to Francis), and Blackledge drove Nwakanma, Francis, and Abdus-Salaam to the gated apartment complex in which Wattecamps lived. Hayes drove there separately in his pickup truck, arranged entry for the other four men through a resident he knew, parked his truck across the street from the entry gate, and waited there while the others entered the apartment complex.

Wattecamps was having a party in his third-floor apartment, and as Blackledge and his three passengers were preparing to enter the apartment, a guest came out, and Blackledge hit him in the face. The four men then ran down the stairs and through the parking lot, pursued by Wattecamps and several of his guests. Brown, Keller, and Washington, who had just parked and were walking

---

crimes was entered against him, inasmuch as the trial court found that the verdicts on these three felony murder counts were vacated by operation of law and that the separate count of aggravated assault upon Brown merged with the felony murder for which Hayes was sentenced. See note 1, supra. Accordingly, his claims that the evidence is legally insufficient to sustain a conviction for these other crimes are moot. See Threatt v. State, 293 Ga. 549, 549-550, n. 2 (1) (748 SE2d 400) (2013).

to the party, heard Wattecamps yell "get them," and began to chase the four men. Blackledge and Francis then fired several shots at their pursuers, one of which fatally wounded Brown in the chest. Nwakanma, Francis, Blackledge, and Abdus-Salaam climbed over the apartment complex fence and hurried into Hayes's truck. Both Francis and Blackledge claimed to have shot Brown, and Hayes drove everyone to Abdus-Salaam's apartment. Six matching .380 caliber shell casings and three .380 caliber projectiles, including the one that entered Brown's chest, were recovered. All of the shell casings came from the same gun, and two of the projectiles, including the one that killed Brown, were fired from the same pistol. We previously considered the evidence in this case when we heard appeals by Nwankanma and Francis, whose convictions were affirmed. See Nwakanma v. State, 296 Ga. 493, 494-495 (1) (768 SE2d 503) (2015). We now consider this evidence anew with respect to Hayes.

(a) Hayes first argues that the evidence does not demonstrate that "MPRC 300" was a "criminal street gang," as alleged in the count of the indictment that charged a violation of the Street Gang Act. In Nwakanma, we indicated that the evidence, when viewed in the light most favorable to the verdict, shows that Hayes and his four co-defendants were associated with "a criminal street gang

4

known as 'MPRC 300.'"[3] 296 Ga. at 494 (1). And our current review of the evidence, viewed in the same light, confirms that "MPRC 300" was a "criminal street gang." The term "criminal street gang" is defined in OCGA § 16-15-3 (2) as "any organization, association, or group of three or more persons associated in fact, whether formal or informal, which engages in criminal gang activity as defined in paragraph (1) of this Code section," which includes "the commission, attempted commission, conspiracy to commit, or solicitation, coercion, or intimidation of another person to commit . . . [a]ny criminal offense in the State of Georgia . . . that involves violence, possession of a weapon, or use of a weapon . . . ." OCGA § 16-15-3 (1) (J).

Hayes claims that the only association among him and his co-defendants was their participation in the underlying crimes and that there is no evidence that any three or more of them had engaged in any other criminal gang activity. But as the Street Gang Act indicates, evidence of their conspiracy to commit armed

---

[3] This determination does not amount to the "law of the case," as that principle applies only if the same issue was decided in a prior proceeding "between the same parties." Foster v. State, 290 Ga. 599, 601-602 (3) (723 SE2d 663) (2012) (citations omitted). Nevertheless, that prior determination in Nwakanma and our affirmance of Nwakanma's and Francis's convictions for violation of the Street Gang Act do have precedential value for our consideration of Hayes's conviction of the same felony. See Taylor v. State, 331 Ga. App. 577, 582 (2) (c) (771 SE2d 224) (2015).

robbery was proof of their existing, ongoing criminal activity. See Rodriguez v. State, 284 Ga. 803, 806 (1) (671 SE2d 497) (2009) ("the phrase 'criminal gang activity' is itself broader than the commission of an enumerated offense and includes the unlawful procurement of the offense"); id. at 809 (2) ("although the 'criminal street gang' may have existed for a short time, its 'criminal gang activity' or plans for continuation of that activity must be ongoing at the time of the defendant's commission of an enumerated offense"); State v. Hood, 307 Ga. App. 439, 442-443 (1) (706 SE2d 566) (2010). And the evidence in this case, including expert testimony about gangs,[4] shows that the abbreviation "MPRC 300" stood for "Money Power Respect Click" and for the first three digits of ZIP codes in the Smyrna area in which MPRC 300 had a presence. MPRC 300 was a hybrid gang, meaning that it was less tightly knit than traditional gangs, covered a broader area, and included persons who had relocated, were also members of different gangs, or were less closely associated with the gang than others were, participating only in some crimes and sometimes

---

[4] Expert testimony by a qualified law enforcement officer regarding gang activity and culture is admissible and relevant to establish that a certain named organization is in fact a "criminal street gang." See Morris v. State, 294 Ga. 45, 49 (3) (751 SE2d 74) (2013); Burgess v. State, 292 Ga. 821, 822-823 (2) (742 SE2d 464) (2013).

6

not tattooed with the gang's symbols. All of the defendants had tattoos that were common to members of gangs in general. Hayes had a tattoo on his back of "MPRC" and "300" with a symbol in-between. The abbreviation "MPRC300" was on his headband in a photograph posted on his social media webpage and was part of his and Francis's user names. Immediately prior to leaving for Wattecamps's apartment, the defendants went to Francis's apartment where they talked more about the robbery, got "amped up," and, in an event called a "jumpoff" or a "freak," had sex with a woman who had tattoos of "Money Power Respect Click 300" and "1st Lady." See OCGA § 16-15-3 (2) ("The existence of such organization, association, or group of individuals associated in fact may be established by evidence of a common name or common identifying signs, symbols, tattoos, graffiti, or attire or other distinguishing characteristics, including, but not limited to, common activities, customs, or behaviors."). This evidence showed that the defendants at least informally associated with one another in criminal gang activity by conspiring to commit armed robbery before they ever left for Wattecamps's apartment, and the jury certainly could have interpreted their actions at Francis's apartment as their way

7

of claiming affiliation with "MPRC 300." See Taylor v. State, 331 Ga. App. 577, 582 (2) (c) (771 SE2d 224) (2015).

The same evidence refutes Hayes's argument that the planned robbery and felony murder were not intended to further the interests of the gang rather than the interests of the individual participants alone. Evidence of Hayes's association with the group known as MPRC 300 and his participation in the group's activities before and during the crimes charged provide the required nexus between his criminal acts and the intent to further the gang's interests. See Rodriguez, 284 Ga. at 807 (1). That evidence implies that he had the specific intent of furthering the criminal purposes of MPRC 300 by committing the violent offenses of conspiracy to commit armed robbery and aggravated assault in order to obtain money, power, and respect for MPRC 300 and its members in the Smyrna area. See id. ("Management of or participation with others in that criminal street gang activity necessarily implies knowledge of the gang's criminal activities and a specific intent to further its criminal purposes." (Citations omitted.)); Zamudio v. State, 332 Ga. App. 37, 41-43 (2) (b) (771 SE2d 733) (2015). Cf. Jones v. State, 292 Ga. 656, 659-660 (1) (b) (740 SE2d 590) (2013) (conviction reversed where the evidence, even when viewed in the

8

light most favorable to the verdict, did not show that the defendant was associated with the named gang or that his commission of the predicate act related in any way to the gang's activities).

(b) Hayes also claims that the evidence is insufficient to sustain his convictions for the felony murder of Brown and the aggravated assaults upon Keller and Washington because there was no evidence that any of Hayes's co-defendants did anything that placed Brown, Keller, or Washington in "reasonable apprehension of immediately receiving a violent injury." OCGA § 16-5-20 (a) (2). Although "central to the offense of aggravated assault is that an assault as defined in OCGA § 16-5-20 be committed on the victim[,] OCGA § 16-5-21 . . . , [Hayes] ignores the fact that a simple assault also occurs when a person '(a)ttempts to commit a violent injury to the person of another.' OCGA § 16-5-20 (a) (1)." Brinson v. State, 272 Ga. 345, 347 (1) (529 SE2d 129) (2000). Where, as in this case, "the assault at issue consists of an attempt to commit a violent injury to the person of another, awareness on the part of the victim is not an essential element of the crime." Smith v. State, 279 Ga. 423, 423 (614 SE2d 65) (2005) (citations and punctuation omitted). "Intentionally firing a gun at another, absent justification, [may be] sufficient in and of itself to

9

support a conviction of aggravated assault." Love v. State, 268 Ga. 484, 485 (1) (490 SE2d 88) (1997) (citation and punctuation omitted). Construing the evidence most strongly in support of the verdict, the jury was authorized to find that Blackledge and Francis attempted to commit violent injuries to the persons of their pursuers, Brown, Keller, and Washington, by intentionally firing guns at them without justification — striking and killing Brown — and that Hayes was a party to these aggravated assaults and the felony murder of Brown. See Tiller v. State, 267 Ga. 888, 890 (3) (485 SE2d 720) (1997). We conclude that the evidence adduced at trial was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Hayes was guilty of the crimes of which he was convicted. Jackson v. Virginia, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

Judgment affirmed. All the Justices concur.