310 Ga. 892
FINAL COPY

S20A1297.  BUTLER v. THE STATE.
S20A1298.  AVERY v. THE STATE.


LaGrua, Justice.

Demarco Butler and Antonio Avery were tried jointly by a DeKalb County jury and convicted of murder and other crimes in connection with a shooting incident that killed Jordan Collins and wounded his brother, Chad Collins.  Butler appeals, contending that the evidence was insufficient to support his convictions and that the trial court erred when it admitted expert testimony about gang activity and about Butler's participation in a gang.  In his separate appeal, Avery contends that the evidence was insufficient to sustain his convictions and that the trial court erred when it admitted a certain part of a recorded police interview.  We discern no error in any of these enumerations, and we therefore affirm both of the

judgments below.[1]

Viewed in the light most favorable to the jury's verdicts, the evidence presented at trial showed as follows: Late in the evening on August 31, 2016, the Collins brothers were at the home of their sister in Lithonia, where they were visited by Clarissa McGhee and

[1] The crimes occurred on September 1, 2016. On December 15, 2016, a DeKalb County grand jury issued a multiple-count indictment against Butler, Avery, Clarissa McGhee, and Nashea Poole. Butler and Avery were each charged with malice murder; felony murder predicated on both the aggravated assault of Jordan and the possession of a firearm by a convicted felon; aggravated assault of Jordan; aggravated assault of Chad; possession of a firearm by a convicted felon; possession of a firearm during the commission of a felony; and violation of the Georgia Street Gang Terrorism and Prevention Act (the "Street Gang Act"), OCGA § 16-15-1 et seq. McGhee and Poole were charged in all of these counts except those charging the firearm-possession offenses and the felony murder counts predicated thereon.

Butler, Avery, and Poole were tried jointly in May 2018; McGhee, who had pled guilty, testified for the State. The jury acquitted all three defendants of malice murder but found them guilty of all the other counts. Butler and Avery were each sentenced to life in prison without the possibility of parole for felony murder predicated on the aggravated assault of Jordan; a consecutive twenty-year term of imprisonment for the aggravated assault of Chad; a consecutive twenty-year term for the Street Gang Act violation; and two consecutive five-year terms for the firearm-possession offenses. The other counts merged or were vacated by operation of law. Butler and Avery each filed a timely motion for new trial in June 2018, and each amended his respective motion in July 2019. After a joint hearing, the trial court denied both motions by separate orders entered on February 26, 2020. Butler and Avery each filed a timely notice of appeal, and their appeals were docketed to the August 2020 term of this Court and submitted for decisions on the briefs.

Nashea Poole, whom Jordan had met through the "Plenty of Fish" dating website. According to Chad, McGhee and Poole gave "unusual" responses when asked about where they lived, and they were noticeably inquisitive about the layout of the house, trying at one point to go upstairs. The women also went outside several times, expressing curiosity about the dog in the back yard, and were on their phones texting throughout the visit. After approximately an hour, Jordan decided to take the women to his house and prepared to leave.

Shortly thereafter, Chad heard the back screen door slam, followed by a commotion and a male voice saying, "chill out" or "watch out." Chad then heard a gunshot and ran outside, where he saw Jordan lying on the patio. Chad was then shot several times. He made his way to the garage, where he found McGhee. Chad yelled at and began chasing McGhee, who pulled out a gun, pointed it at Chad, and then fled. Chad survived, but Jordan died of his wounds. Chad testified that neither he nor his brother had any weapons at their sister's home and that, to his knowledge, their

sister did not keep any weapons there, either.

According to the medical examiner, Jordan's wounds were inflicted by a combination of shots fired from a shotgun and a handgun. This finding was corroborated by the recovery at the scene of both .22-caliber shell casings ejected from a handgun and a single shell casing from a shotgun. An investigating officer testified that one person cannot hold and fire both a shotgun and another gun at the same time. No weapons were found at the scene.

McGhee, who pled guilty to aggravated assault, testified for the State as follows: In July or August 2016, Poole introduced her to Butler and Avery, who were high-ranking members of the Bloods gang. McGhee began dating Avery and joined the Bloods; Poole was a member of the gang as well. During this timeframe, Poole created a Plenty of Fish account for McGhee for the purpose of "escorting," which McGhee described as "basically like prostitution."

On the evening of the crimes, McGhee went to Butler's house. Avery and Poole were there, and the women made preparations to meet an escorting client. When McGhee and Poole arrived at the

planned location, however, they became uncomfortable with the situation and left. The women met back up with Butler and Avery at a gas station and decided to go meet Jordan, whose photograph they showed to Butler and Avery. Avery gave McGhee a gun to take with her.

McGhee and Poole drove to Lithonia, with Butler and Avery following them for "protection." By the time the women arrived at the home, Butler and Avery had disappeared. At the home, McGhee and Poole sat talking with Jordan and Chad, at one point going to the back yard to give the dog some water and then returning inside. Shortly thereafter, the dog began barking, and, when Jordan and Poole stepped outside, shots rang out. Chad ran outside, and McGhee retreated to the garage. After a few minutes, Chad ran into the garage, angrily demanding to know "who the f*** brought you over here." McGhee pulled out the gun, and Chad backed off. As McGhee ran outside, she heard more gunshots and saw Avery standing in the yard with a gun. McGhee and Poole got into McGhee's car and left, and Avery ran away. McGhee testified that

5

she did not see Butler.

According to McGhee, she and Poole then went back to Butler's house. Butler and Avery were there, and in the house McGhee noticed two guns, one of which she identified as a shotgun. The women demanded to know what had happened, and Butler eventually responded, "he tried to grab the gun and got shot." Avery warned McGhee not to call the police, or she would "be the one that got blamed for it all."

In addition to the foregoing evidence, the State introduced the testimony of two law enforcement officers who were qualified as experts on criminal street gangs. One of these officers testified that Butler was known to be a founding member of the "Luciano Bloods," a subset of the national Bloods gang with its own organized structure and lengthy track record of violent crime. This officer testified that the Luciano Bloods use prostitution as "the main money maker for the gang" and have been known to use online platforms to lure "johns," under the pretense of prostitution services, for the purpose of robbing them. The other officer testified that, in

investigating the crimes at issue here, he had uncovered gang-related messages posted by Butler on social media, gang-related text messages extracted from Avery's cell phone, and photographs posted on social media depicting both men wearing Bloods-associated clothing and flashing Bloods gang signs.

The State also presented evidence that, during a time span closely coinciding with the shootings, a cell phone used by Butler was used to communicate with Avery's and Poole's cell phones. In addition, cell tower records showed that, in the hours encompassing the shootings, the phones associated with Butler, Avery, and Poole moved from the area near Butler's College Park home to the area near the Lithonia crime scene and back again. Butler and Avery each stipulated to being a convicted felon at the time of the shootings.

1. Both Butler and Avery challenge the sufficiency of the evidence supporting their convictions. Butler argues generally that the evidence was insufficient, and Avery argues more specifically that because there was no evidence regarding the details of the

7

actual shootings, it was impossible to determine whether the shooters were the initial aggressors or whether, alternatively, Jordan became aggressive when he saw strangers on the property, causing the shooters to act in self-defense.

When evaluating challenges to the sufficiency of the evidence to support criminal convictions as a matter of constitutional due process, "we view the evidence presented at trial in the light most favorable to the verdicts and ask whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt of the crimes of which he was convicted." *Boyd v. State*, 306 Ga. 204, 207 (1) (830 SE2d 160) (2019) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979) and *Jones v. State*, 304 Ga. 594, 598 (820 SE2d 696) (2018)). In addition, as a matter of Georgia statutory law, "[t]o warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." OCGA § 24-14-6. That said, "not every hypothesis is reasonable." *Hamilton v. State*,

309 Ga. 1, 6 (2) (843 SE2d 840) (2020) (citation and punctuation omitted). "We leave to the jury the resolution of conflicts or inconsistencies in the evidence, credibility of witnesses, and reasonable inferences derived from the facts." *Boyd*, 306 Ga. at 207 (1). Likewise, we allow the jury to decide "whether the defense theory was reasonable and not excluded by the other evidence." *Hamilton*, 309 Ga. at 6 (2) (citation and punctuation omitted).

(a) The evidence presented at trial showed, among other things, that: McGhee and Poole had connected with the victims through a dating website they used for prostitution and made plans to meet with them on the night of the crimes; Butler and Avery, both convicted felons, met with McGhee and Poole before the women left to meet the victims, gave McGhee a gun, and followed them to their meeting; during their visit with the victims, McGhee and Poole acted strangely, were markedly curious about the layout of the house, went outside several times, and were frequently texting on their phones; Avery was present at the crime scene with a gun during the shootings; McGhee went to Butler's house after the shootings and

9

saw Butler and Avery there with two guns, one of which was a shotgun; when questioned about the shootings, Butler responded that someone "got shot" because "he tried to grab the gun"; Avery told McGhee not to call the police regarding the shootings; cell phones used by Butler, Avery, and Poole communicated with each other immediately before, during, and after the shootings; and during this time frame, these cell phones traveled in a similar path from the area near Butler's house to the area near the crime scene and back. In addition, the evidence showed that Jordan was killed by shots fired from a shotgun and a handgun, indicating the presence of two shooters, and that no weapons were recovered from the scene, which supports Chad's testimony that neither he nor Jordan had a weapon at the time of the shootings. This evidence was sufficient to authorize a rational jury to reject the hypothesis that Butler and Avery acted in self-defense and to find beyond a reasonable doubt that both Butler and Avery were guilty, either directly or as parties to these crimes, see OCGA § 16-2-20, of the felony murder of Jordan predicated on aggravated assault; the

10

aggravated assault of Chad; and the firearm-possession offenses of which they were convicted. See *Boyd*, 306 Ga. at 208 (1) (a); *Merritt v. State*, 285 Ga. 778, 779-780 (1) (2009) (though evidence was entirely circumstantial, jury was entitled to reject appellant's theory that victim had been shot by unknown intruder). See also *Shaw v. State*, 292 Ga. 871, 872 (1) (742 SE2d 707) (2013) ("[T]he jury is free to reject a defendant's claim that he acted in self-defense." (Citation and punctuation omitted.)).

(b) With regard to the Street Gang Act violation, the State was required to establish:

> (1) the existence of a "criminal street gang," defined in OCGA § 16-15-3 [(3)] as "any organization, association, or group of three or more persons associated in fact, whether formal or informal, which engages in criminal gang activity"; (2) the defendant's association with the gang; (3) that the defendant committed [any of several enumerated criminal offenses, including those "involv[ing] violence, possession of a weapon, or use of a weapon"]; and (4) that the crime was intended to further the interests of the gang.

*Boyd*, 306 Ga. at 209 (1) (b) (citations and punctuation omitted). As to the fourth element, which is the focus of Butler's and Avery's

11

contentions, "the State must prove that the commission of the predicate act was intended to further the interests of the gang." Id. at 210 (citation and punctuation omitted). This element requires some nexus between the act and the intent to further street gang activity. *Rodriguez v. State*, 284 Ga. 803, 807 (1) (671 SE2d 497) (2009).

Butler and Avery both argue that the State failed to prove that the shootings were committed with an intent to further the interests of a gang, relying heavily on the fact that McGhee testified that there was no plan to commit the shootings and that the incident was unrelated to their gang. However, where there is other evidence supporting an inference that criminal conduct was committed with the intent to further the interests of a gang, a witness' disavowal of such an intent does not necessarily compel a finding that such intent was lacking. See *Boyd*, 306 Ga. at 211 (1) (b). For example, evidence of a defendant's association with a gang and participation in its activities before and during the crimes charged may "provide the required nexus between his criminal acts and the intent to further

12

the gang's interests." *Hayes v. State*, 298 Ga. 339, 342-343 (a) (781 SE2d 777) (2016); see also *Rodriguez*, 284 Ga. at 807 (1) ("Management of or participation with others in . . . criminal street gang activity necessarily implies knowledge of the gang's criminal activities and a specific intent to further its criminal purposes."). In addition, there was evidence that the gang used prostitution and robbery of "johns" to finance the gang and that the shootings resulted from that sort of activity. See *Stripling v. State*, 304 Ga. 131, 134 (1) (b) (816 SE2d 663) (2018). Likewise, discussions between fellow gang members after the charged crimes, which may include attempts to avoid getting caught, may offer further evidence of a nexus between the crimes and the gang's interests. See *Boyd*, 306 Ga. at 211-212 (1) (a).

Here, the evidence, in addition to that described above, showed that Butler and Avery were high-ranking members of the Bloods criminal gang, which McGhee and Poole had joined as well; the Luciano Bloods, an organized subset of the Bloods that Butler had helped establish, had a history of violent criminal activity; and the

Luciano Bloods employed prostitution as a primary means of funding its operations and had in the past used women to lure "johns" to rob them.

Additionally, as noted above, McGhee and Poole connected with the victims through a dating website they used to set up prostitution meetings; Butler and Avery were present with the women immediately before and after the shootings and were in communication with them throughout the period during which the shootings took place; and following the shootings, Butler and Avery discussed the crimes with the women and warned them not to talk to the police. Viewed as a whole, this evidence was sufficient to establish a nexus between the charged crimes and an intent to further the gang's interests, and, accordingly, the evidence was sufficient to authorize a rational trier of fact to find that Appellants violated the Street Gang Act.

2. Butler contends that the trial court erred in admitting evidence of his gang participation and the other gang-related testimony. Decisions regarding the admission of evidence are

committed to the discretion of the trial court and are not to be disturbed absent an abuse of that discretion. See *Anglin v. State*, 302 Ga. 333, 335 (2) (806 SE2d 573) (2017).

Butler first maintains that he was charged with the Street Gang Act violation purely to justify the admission of inflammatory gang-related evidence and thereby enhance the chances that the jury would convict him of the other charged crimes. However, as the grand jury returned an indictment charging a violation of the Street Gang Act, the State was merely executing its duty to "prosecute all indictable offenses." OCGA § 15-18-6 (4). And we have already concluded that the evidence was sufficient to support his conviction for this offense. Butler's claim in this regard, thus, has no merit.

Butler next asserts that the gang evidence should have been excluded because its highly prejudicial nature substantially outweighed its probative value. See OCGA § 24-4-403 ("Rule 403") ("Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice[.]"). We disagree. While gang evidence may be prejudicial, "it is only when

15

*unfair* prejudice substantially outweighs probative value that [Rule 403] permits exclusion." *Anglin*, 302 Ga. at 337 (3) (citation and punctuation omitted; emphasis in original). Here, the gang evidence was not just highly probative but indeed necessary to prove several of the essential elements of the Street Gang Act offense — the existence of the gang, Butler's participation therein, and the nexus between the crimes and the gang's interests. Moreover, as we have noted, the exclusion of evidence under Rule 403 is an "extraordinary remedy, which should be used only sparingly, and the balance should be struck in favor of admissibility." Id. (citation and punctuation omitted). Accordingly, we discern no abuse of discretion in the trial court's decision to admit the gang evidence. See *Armstrong v. State*, ___ Ga. ___ (2) (b) (852 SE2d 824) (2020) (no abuse of discretion in admitting gang evidence); *Anglin*, 302 Ga. at 337 (3) (same).

3. Avery contends that the trial court abused its discretion in admitting Poole's recorded interview with the police because the interrogating officer commented upon an ultimate issue in the case.

16

Specifically, Avery asserts error with regard to the following statement by the officer:

> [D]o you know what—what I mean when I say party to a crime, do you know what that means, have you ever heard anybody talk about that? Even though I know that you and [McGhee] didn't kill these guys, because you're a party to a crime, at this point you're being charged just the same as if you stood there and pulled the trigger yourself.

According to Avery, this statement amounted to opinion testimony on the ultimate issue of his and Butler's guilt.

As an initial matter, while Avery objected to the admission of Poole's interview on other grounds, he did not raise an objection on the ultimate-issue ground, and thus this enumeration is reviewable only for plain error. See *Brewner v. State*, 302 Ga. 6, 12 (III) (804 SE2d 94) (2017). Regardless of the standard of review, however, there was no error in the trial court's admission of the complained-of statement. First, the officer's statement does not constitute "ultimate issue" opinion testimony. See *Butler v. State*, 292 Ga. 400, 405-406 (3) (a) (738 SE2d 74) (2013) (interrogating officer's comments for the purpose of eliciting a response from a suspect do

not amount to improper opinion testimony).  And, even if they did, the current Evidence Code — unlike the former Code — does not generally prohibit lay witness testimony on "ultimate issue" grounds.  See OCGA § 24-7-704 (a); *Mack v. State*, 306 Ga. 607, 610 (2) (832 SE2d 415) (2019) (even if detective's comments "touched on the ultimate issue in the case," they were not subject to exclusion under OCGA § 24-7-704 (a)).  Thus, this enumeration is without merit.

*Judgments affirmed.  All the Justices concur.*

Decided March 1, 2021.

Murder. DeKalb Superior Court. Before Judge Adams.

*Teri L. Doepke*, for appellant (case no. S20A1297).

*Dell Jackson*, for appellant (case no. S20A1298).

*Sherry Boston, District Attorney, Emily K. Richardson, Elizabeth H. Brock, Deborah D. Wellborn, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Leslie A. Coots, Assistant Attorney General*, for appellee.