312 Ga. 515
FINAL COPY

S21A1103.  POOLE v. THE STATE.

COLVIN, Justice.

Following a jury trial, Nashea Poole was convicted of felony murder and related offenses in connection with crimes committed against Jordan and Chad Collins.[1]  Poole raises numerous claims

[1] On December 15, 2016, a DeKalb County grand jury jointly indicted Poole, Antonio Avery, Clarissa McGhee, and Demarco Butler for the malice murder of Jordan (Count 1), the felony murder of Jordan predicated on aggravated assault (Count 2), the aggravated assaults of Jordan and Chad (Counts 5 and 6), and violating the Street Gang Terrorism and Prevention Act (the "Gang Act") by committing an aggravated assault against Jordan (Count 10).  Avery and Butler were indicted on additional charges of felony murder and possession of a firearm.

    Poole, Avery, and Butler were tried together from May 7 through 16, 2018; the jury acquitted all three of malice murder but found them guilty of all other counts.  Poole was sentenced to life in prison without parole for felony murder, 20 years consecutive for the aggravated assault of Chad, and 20 years consecutive for the Gang Act charge.  The remaining aggravated assault count merged into the felony murder conviction for sentencing purposes.  This Court affirmed Avery's and Butler's convictions in *Butler v. State*, 310 Ga. 892 (855 SE2d 551) (2021).

    Poole filed a motion for new trial on May 17, 2018, which she amended through new counsel on October 28, 2020, and April 19, 2021.  After a hearing, the trial court denied the motion as amended on May 11, 2021.  Poole timely filed a notice of appeal.  The appeal was docketed to the August 2021 term of this Court and submitted for a decision on the briefs.

alleging that the evidence presented at trial was insufficient to support her convictions. We affirm.

As recounted by this Court in *Butler v. State*, 310 Ga. 892 (855 SE2d 551) (2021), the evidence presented at the joint jury trial showed as follows:

> Late in the evening on August 31, 2016, the Collins brothers were at the home of their sister in Lithonia, where they were visited by Clarissa McGhee and Nashea Poole, whom Jordan had met through the "Plenty of Fish" dating website. According to Chad, McGhee and Poole gave "unusual" responses when asked about where they lived, and they were noticeably inquisitive about the layout of the house, trying at one point to go upstairs. The women also went outside several times, expressing curiosity about the dog in the back yard, and were on their phones texting throughout the visit. After approximately an hour, Jordan decided to take the women to his house and prepared to leave.
>
> Shortly thereafter, Chad heard the back screen door slam, followed by a commotion and a male voice saying, "chill out" or "watch out." Chad then heard a gunshot and ran outside, where he saw Jordan lying on the patio. Chad was then shot several times. He made his way to the garage, where he found McGhee. Chad yelled at [McGhee] and began chasing [McGhee], who pulled out a gun, pointed it at Chad, and then fled. Chad survived, but Jordan died of his wounds. Chad testified that neither he nor his brother had any weapons at their sister's home and that, to his knowledge, their sister did not keep any weapons there, either.

2

According to the medical examiner, Jordan's wounds were inflicted by a combination of shots fired from a shotgun and a handgun. This finding was corroborated by the recovery at the scene of both .22-caliber shell casings ejected from a handgun and a single shell casing from a shotgun. An investigating officer testified that one person cannot hold and fire both a shotgun and another gun at the same time. No weapons were found at the scene.

McGhee, who pled guilty to aggravated assault, testified for the State as follows: In July or August 2016, Poole introduced her to Butler and Avery, who were high-ranking members of the Bloods gang. McGhee began dating Avery and joined the Bloods; Poole was a member of the gang as well. During this time frame, Poole created a Plenty of Fish account for McGhee for the purpose of "escorting," which McGhee described as "basically like prostitution."

On the evening of the crimes, McGhee went to Butler's house. Avery and Poole were there, and the women made preparations to meet an escorting client. When McGhee and Poole arrived at the planned location, however, they became uncomfortable with the situation and left. The women met back up with Butler and Avery at a gas station and decided to go meet Jordan, whose photograph they showed to Butler and Avery. Avery gave McGhee a gun to take with her.

McGhee and Poole drove to Lithonia, with Butler and Avery following them for "protection." By the time the women arrived at the home, Butler and Avery had disappeared. At the home, McGhee and Poole sat talking with Jordan and Chad, at one point going to the back yard to give the dog some water and then returning inside. Shortly thereafter, the dog began barking, and, when Jordan and Poole stepped outside, shots rang out. Chad ran outside, and McGhee retreated to the garage. After a

few minutes, Chad ran into the garage, angrily demanding to know "who the f*** brought you over here." McGhee pulled out the gun, and Chad backed off. As McGhee ran outside, she heard more gunshots and saw Avery standing in the yard with a gun. McGhee and Poole got into McGhee's car and left, and Avery ran away. McGhee testified that she did not see Butler.

According to McGhee, she and Poole then went back to Butler's house. Butler and Avery were there, and in the house McGhee noticed two guns, one of which she identified as a shotgun. The women demanded to know what had happened, and Butler eventually responded, "he tried to grab the gun and got shot." Avery warned McGhee not to call the police, or she would "be the one that got blamed for it all."

In addition to the foregoing evidence, the State introduced the testimony of two law enforcement officers who were qualified as experts on criminal street gangs. One of these officers testified that Butler was known to be a founding member of the "Luciano Bloods," a subset of the national Bloods gang with its own organized structure and lengthy track record of violent crime. This officer testified that the Luciano Bloods use prostitution as "the main money maker for the gang" and have been known to use online platforms to lure "johns," under the pretense of prostitution services, for the purpose of robbing them. The other officer testified that, in investigating the crimes at issue here, he had uncovered gang-related messages posted by Butler on social media, gang-related text messages extracted from Avery's cell phone, and photographs posted on social media depicting both men wearing Bloods-associated clothing and flashing Bloods gang signs.[2]

---

[2] The State also introduced a photograph of Poole, McGhee, Butler, and

4

The State also presented evidence that, during a time span closely coinciding with the shootings, a cell phone used by Butler was used to communicate with Avery's and Poole's cell phones. In addition, cell tower records showed that, in the hours encompassing the shootings, the phones associated with Butler, Avery, and Poole moved from the area near Butler's College Park home to the area near the Lithonia crime scene and back again. Butler and Avery each stipulated to being a convicted felon at the time of the shootings.

Id. at 893-895.

Poole contends that the evidence presented at trial was constitutionally insufficient to sustain her convictions pursuant to *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979), because the State failed to show that she was a party to a crime, the State failed to show that the crimes were committed with the intent to further gang interests, and because her convictions were based solely upon uncorroborated accomplice testimony. Poole also argues that the evidence of her guilt was

Avery. In the picture, Poole and McGhee are wearing red bandanas and holding guns; Butler and Avery are behind the women flashing gang signs associated with the Bloods. A "Book of Knowledge" pertaining to the Bloods was also found in Avery's dresser.

entirely circumstantial and did not rule out other, "more reasonable" explanations for the events that occurred on the night of the crimes. We disagree.

When evaluating the sufficiency of evidence as a matter of constitutional due process, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis omitted.) *Jackson*, 443 U. S. at 319 (III) (B). "This Court does not reweigh evidence or resolve conflicts in testimony; instead, evidence is reviewed in a light most favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence." (Citation and punctuation omitted.) *Hayes v. State*, 292 Ga. 506, 506 (739 SE2d 313) (2013).

Poole claims that the evidence was legally insufficient to support her felony murder conviction because the State failed to prove that she was a party to the underlying felony of aggravated assault. But "criminal intent is a question for the jury, and it may

6

be inferred from that person's conduct before, during, and after the commission of the crime." *Jones v. State*, 292 Ga. 656, 658 (1) (a) (740 SE2d 590) (2013). Also, "[w]hile mere presence at the scene of a crime is not sufficient evidence to convict one of being a party to a crime, criminal intent may be inferred from presence, companionship, and conduct before, during and after the offense." (Citation and punctuation omitted.) *Parks v. State*, 304 Ga. 313, 315 (1) (a) (818 SE2d 502) (2018). Finally, "[t]he intent of the actual killer may be imputed to the other active members of the conspiracy even though the homicide may not have been a part of the original common design." *Williams v. State*, 276 Ga. 384, 385 (3) (578 SE2d 858) (2003).

Here, the State presented sufficient evidence that Poole was a party to the crimes charged. As this Court observed in *Butler*, 310 Ga. at 896 (1) (a):

> The evidence presented at trial showed, among other things, that McGhee and Poole had connected with the victims through a dating website they used for prostitution and made plans to meet with them on the night of the crimes; Butler and Avery, both convicted

7

felons, met with McGhee and Poole before the women left to meet the victims, gave McGhee a gun, and followed them to their meeting; during their visit with the victims, McGhee and Poole acted strangely, were markedly curious about the layout of the house, went outside several times, and were frequently texting on their phones; Avery was present at the crime scene with a gun during the shootings; McGhee [and Poole] went to Butler's house after the shootings and [McGhee] saw Avery and Butler there with two guns, one of which was a shotgun; when questioned about the shootings, Butler responded that someone "got shot" because "he tried to grab the gun"; Avery told McGhee not to call the police regarding the shootings; cell phones used by Butler, Avery, and Poole communicated with each other immediately before, during, and after the shootings; and during this time frame, these cell phones traveled in a similar path from the area near Butler's house to the area near the crime scene and back. In addition, the evidence showed that Jordan was killed by shots fired from a shotgun and a handgun, indicating the presence of two shooters, and that no weapons were recovered from the scene, which supports Chad's testimony that neither he nor Jordan had a weapon at the time of the shootings.

When viewed in the light most favorable to the verdicts, the evidence presented at trial and summarized above was sufficient as a matter of constitutional due process to authorize a rational jury to find Poole guilty beyond a reasonable doubt of the felony murder of Jordan predicated on aggravated assault based upon her being a

8

party to the crime.[3]   See OCGA §§ 16-2-20 (defining "party to a crime") and 16-5-1 (c) (defining "felony murder").

Next, Poole argues that there was insufficient evidence to support her Gang Act conviction because the State failed to show the necessary nexus between the shooting and an intent to further gang interests.[4]   However, this Court already rejected a similar claim raised by Butler and Avery.   In *Butler*, 310 Ga. at 896-898 (1) (b), this Court explained:

> With regard to the Street Gang Act violation, the State was required to establish:
> (1) the existence of a "criminal street gang," defined in OCGA § 16-15-3 (3) as "any organization, association, or group of three or more persons associated in fact, whether formal

---

[3] Poole also contends that the trial court abused its discretion when it declined to grant a new trial pursuant to the general grounds set forth in OCGA §§ 5-5-20 and 5-5-21.  However, our review of a trial court's denial on the general grounds is limited to review of the sufficiency of the evidence under *Jackson*.  See *Lewis v. State*, 296 Ga. 259, 261 (3) (765 SE2d 911) (2014).  For the reasons discussed above, the evidence was sufficient to support Poole's convictions.

[4] Poole also argues that there was insufficient evidence to support her Gang Act conviction because the State failed to present evidence of the necessary nexus between Poole's escorting and an intent to further gang interests.   However, Poole was indicted for violating the Gang Act by committing an aggravated assault against Jordan.  Accordingly, the State did not need to prove escorting as a predicate offense for the Gang Act charge.

9

or informal, which engages in criminal gang activity"; (2) the defendant's association with the gang; (3) that the defendant committed [any of several enumerated criminal offenses, including those "involv[ing] violence, possession of a weapon, or use of a weapon"]; and (4) that the crime was intended to further the interests of the gang.

*Boyd*[ *v. State*, 306 Ga. 204, 209 (1) (b) (830 SE2d 160) (2019)] (citations and punctuation omitted). As to the fourth element, which is the focus of Butler's and Avery's contentions, "the State must prove that the commission of the predicate act was intended to further the interests of the gang." Id. at 210 (citation and punctuation omitted). This element requires some nexus between the act and the intent to further street gang activity. *Rodriguez v. State*, 284 Ga. 803, 807 (1) (671 SE2d 497) (2009).

Butler and Avery both argue that the State failed to prove that the shootings were committed with an intent to further the interests of a gang, relying heavily on the fact that McGhee testified that there was no plan to commit the shootings and that the incident was unrelated to their gang. However, where there is other evidence supporting an inference that criminal conduct was committed with the intent to further the interests of a gang, a witness' disavowal of such an intent does not necessarily compel a finding that such intent was lacking. See *Boyd*, 306 Ga. at 211 (1) (b). For example, evidence of a defendant's association with a gang and participation in its activities before and during the crimes charged may "provide the required nexus between his criminal acts and the intent to further the gang's interests." *Hayes v. State*, 298 Ga. 339, 342-343 (a) (781 SE2d 777) (2016); see also *Rodriguez*, 284 Ga. at 807 (1) ("Management of or participation with others in . . . criminal street gang

activity necessarily implies knowledge of the gang's criminal activities and a specific intent to further its criminal purposes."). In addition, there was evidence that the gang used prostitution and robbery of "johns" to finance the gang and that the shootings resulted from that sort of activity. See *Stripling v. State*, 304 Ga. 131, 134 (1) (b) (816 SE2d 663) (2018). Likewise, discussions between fellow gang members after the charged crimes, which may include attempts to avoid getting caught, may offer further evidence of a nexus between the crimes and the gang's interests. See *Boyd*, 306 Ga. at 211-212 (1) (b).

Here, the evidence, in addition to that described above, showed that Butler and Avery were high-ranking members of the Bloods criminal gang, which McGhee and Poole had joined as well; the Luciano Bloods, an organized subset of the Bloods that Butler had helped establish, had a history of violent criminal activity; and the Luciano Bloods employed prostitution as a primary means of funding its operations and had in the past used women to lure "johns" to rob them.

Additionally, as noted above, McGhee and Poole connected with the victims through a dating website they used to set up prostitution meetings; Butler and Avery were present with the women immediately before and after the shootings and were in communication with them throughout the period during which the shootings took place; and following the shootings, Butler and Avery discussed the crimes with the women and warned them not to talk to the police. Viewed as a whole, this evidence was sufficient to establish a nexus between the charged crimes and an intent to further the gang's interests, and, accordingly, the evidence was sufficient to authorize a rational trier of fact to find that [Butler and Avery] violated the Street Gang Act.

(Punctuation omitted.) Accordingly, as a matter of constitutional due process, the jury was authorized to find Poole guilty beyond a reasonable doubt of the crimes for which she was convicted. See *Jackson*, 443 U. S. at 319 (III) (B). See also *Butler*, 310 Ga. at 898 (1) (b) (concluding there was sufficient evidence to support Butler's and Avery's convictions).

Poole also argues that there was insufficient evidence to support her convictions as a matter of Georgia statutory law because all of the evidence of her participation in the crimes and her membership in the Bloods gang came from McGhee's uncorroborated accomplice testimony. See OCGA § 24-14-8. But this claim is belied by the record, which shows that McGhee's testimony was sufficiently corroborated by the physical evidence collected at the crime scene, by Chad Collins' testimony regarding the events that occurred that evening, by postings to the defendants' social media accounts, and by cell phone data introduced into evidence at trial. See *Yarn v. State*, 305 Ga. 421, 424 (2) (826 SE2d 1) (2019) (discussing corroboration of accomplice testimony).

Finally, Poole argues that, as a matter of Georgia statutory law, the evidence presented at trial was insufficient to sustain her convictions because the evidence of her guilt was entirely circumstantial and did not exclude the reasonable hypothesis of her mere presence at the crime scene. See OCGA § 24-14-6. Even assuming this is a wholly circumstantial case, we conclude that the evidence presented at trial was sufficient to support Poole's convictions.

Under OCGA § 24-14-6,

in order to convict [Poole] of the crimes based solely upon circumstantial evidence, the proven facts had to be consistent with the hypothesis of [her] guilt and exclude every reasonable hypothesis save that of [her] guilt. Not every hypothesis is reasonable, and the evidence does not have to exclude every conceivable inference or hypothesis; it need rule out only those that are reasonable.

(Citation and punctuation omitted.) *Cochran v. State*, 305 Ga. 827, 829 (1) (828 SE2d 338) (2019). Whether the evidence excludes every other reasonable hypothesis is a question for the jury, see *Collett v. State*, 305 Ga. 853, 855-856 (1) (828 SE2d 362) (2019), and that finding will not be disturbed on appeal unless the verdict is

insupportable as a matter of law, see *Akhimie v. State*, 297 Ga. 801, 804 (1) (777 SE2d 683) (2015).

Poole claims that the State's evidence did not exclude the reasonable hypothesis of her mere presence at the crime scene. However, based upon the evidence presented at trial and discussed at length above, the jury was not required to find that Poole's hypothesis that she was merely present was a reasonable one. Indeed, the jury could reasonably infer that Poole not only knew of Butler's and Avery's plans, but also shared a common criminal intent and acted in concert with them in committing the crimes. See *Worthen v. State*, 304 Ga. 862, 867 (3) (c) (823 SE2d 291) (2019) ("Jurors are normally entitled to make reasonable inferences from circumstantial evidence regarding all sorts of facts, including the facts necessary to find defendants guilty beyond a reasonable doubt of capital crimes."). Consequently, the evidence was sufficient to authorize the jury to "exclude every other reasonable hypothesis save that of . . . guilt[.]" OCGA § 24-14-6.

*Judgment affirmed. All the Justices concur.*

14

Decided September 21, 2021.

Murder. DeKalb Superior Court. Before Judge Adams.

*Titus T. Nichols*, for appellant.

*Sherry Boston, District Attorney, Elizabeth H. Brock, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Leslie A. Coots, Assistant Attorney General*, for appellee.